## UNITED STATES v. WOLRICH.

United States District Court,
S. D. New York.

Feb. 26, 1954.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Richard Owen, Asst. U. S. Atty., New York City, of counsel), for plaintiff.

Corcoran & Kostelanetz, Louis Bender, Arthur Block, New York City (Arthur Block, Boris Kostelanetz, Louis Bender and Jules Ritholz, New York City, of counsel), for defendant.

DIMOCK, District Judge.

This is a motion pursuant to Rule 41 (e) of the Federal Rules of Criminal Procedure, 18 U.S.C. for the return of certain papers and their suppression as evidence on the ground that the property was illegally seized without warrant.

Defendant is under indictment for wilfully attempting to evade payment of income taxes for the calendar year 1945 in violation of section 145(b) of the Internal Revenue Code, 26 U.S.C. § 145(b).

Defendant contends that the examination of his books by internal revenue agents was an unlawful search and that the notations and extracts which were taken from the examination were illegally seized. The Government contends that by his consent to the examinations complained of defendant waived his right not to have his private books searched and seized. Defendant seems to concede that he consented to the examination but argues that his consent was induced by misrepresentation and that the alleged fraud vitiated his consent.

The following is defendant's version of the facts. In July, 1947, Walter H. McGinn introduced himself as an Internal Revenue Agent to defendant's accountant and said that he wished to make the "usual routine audit" of defendant's income tax return for the calendar year of 1945. Defendant's accountant arranged to meet Agent McGinn at defendant's place of business where he made defendant's books, records and papers available for Agent McGinn's examination. Agent McGinn spent several days examining these records and making notations on his examination. The examination was suspended for several months and, in the middle of November, Agent McGinn returned to defendant's office where defendant's accountant again made defendant's records available for his inspection. The following week, Agent McGinn informed defendant's accountant that he had completed his examination. They then discussed "the propriety of certain items, discussed proposed adjustments thereof and came to an agreement as to these adjustments which said Internal Revenue Agent McGinn stated he would embody in his final report to be sent to the defendant taxpayer together with the usual form agreement thereon." The next day, Agent McGinn telephoned defendant's accountant and said that he had overlooked one transaction which he wanted to check. He said that he had to verify this item in order to complete his report. On this visit to defendant's office, Agent McGinn was accompanied by another man whom he introduced to defendant's accountant as a "fellow Revenue Agent". The two agents examined defendant's records and made extracts and notations. The "fellow Agent" was a Special Agent of the In-

telligence Unit of the Treasury Department.

Defendant alleges that he authorized his accountant to make his books available on the express understanding that a routine audit was involved, that civil liability alone was the subject of inquiry. He alleges that in fact a criminal investigation was being conducted and argues that the consent thus given was induced by fraud and coercion and therefore was not voluntary consent which amounted to a waiver of his right not to have his private papers searched and seized.

First, defendant contends that the agent's representation that the examination was a "routine audit" when in fact there was a possibility of criminal liability was fraud which vitiated his consent. Secondly, defendant argues that his fear of the statutory penalty for failure to disclose the information sought for the determination of his civil liability compelled him to make his books available.

On defendant's own version of the facts, I find that defendant voluntarily consented to the examination of his books and thus waived his right to complain of its illegality.

On the issue of fraud, defendant relies heavily on cases in which law enforcement officials gained entry by masquerading as private citizens. See Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Fraternal Order of Eagles v. United States, 3 Cir., 57 F.2d 93; United States v. Mitchneck, D.C.M.D.Pa., 2 F.Supp. 225. Here, the revenue agent made no attempt to hide his official identity or the official purpose of his business. Surely defendant was aware that, if a "routine audit" revealed evidence of criminal liability, the agent would not ignore it merely because he was primarily concerned with civil liability. Defendant was apprised of the fact that his books were sought for investigation by an official of the Internal Revenue Bureau. On that understanding, he authorized his accountant to make his books available. I cannot accept defendant's reasoning or that of the court in United States v. Guerrina, D.C. E.D.Pa., 112 F.Supp. 126. A statement that the purpose of an investigation is a "routine audit" is not the equivalent of a promise that only civil liability will be considered regardless of what the examination reveals. Nor would any accountant or businessman so understand it.

Defendant's argument with respect to coercion seems to proceed as follows. The "routine audit" statement led defendant to believe that no criminal charges would be made against him. If no criminal charges could be made against him he was subject to the penalties prescribed in sections 145 and 3614 of the Internal Revenue Code, if he failed to permit examination of his papers. If criminal charges could be made against him he could, under United States v. Murdock, 284 U.S. 141, 52 S. Ct. 63, 76 L.Ed. 210; Id., 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, escape the imposition of those penalties for such failure. Since he was assured that the only claims against him were civil, he believed that he was subject to the compulsion of Internal Revenue Code sections 145 and 3614, and, in that belief, permitted the examination. In truth and in fact he was not subject to that compulsion so the permission was obtained by fraud.

This argument is not really an alternative but rests upon the proposition which I have already rejected i. e. that the characterization of the investigation as routine amounted to a representation that nothing discovered would be used in a criminal prosecution.

Defendant has also moved for examination of certain Government witnesses and the production of certain documents for use at a hearing on the factual issues raised by his motion to suppress evidence. Since I have disposed of the main motion on defendant's own story, no hearing is necessary and the subsidiary motion to examine is dismissed.

Motion denied.