Luther F. GRANT and Sirrka V. Grant, Petitioners-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 344, Docket 26183.

United States Court of Appeals Second Circuit.

Argued May 12, 1960.

Decided July 28, 1960.

Kenneth P. Ray, Asst. U. S. Atty., Syracuse, N. Y. (Theodore F. Bowes, U. S. Atty., Northern Dist. of New York, Syracuse, New York, on the brief), for appellant.

Joseph W. Burns, New York City (John P. Cuddahy and Austin, Burns, Appell & Smith, New York City, and George Bond, Jr., N. Earle Evans, Jr. and Bond, Schoeneck & King, Syracuse, New York, on the brief), for appellees.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Luther F. Grant and his wife Sirrka V. Grant are physicians practicing in Liberty, New York. Luther applied on their joint behalf to the District Court for the Northern District of New York, pursuant to Fed.R.Crim.Proc. 41(e), 18 U.S.C., for an order suppressing as evidence records and papers that he had made available to agents of the Internal Revenue Service. He alleged that the records had been obtained in violation of the Fourth and Fifth Amendments and that the United States attorney was about to present to a grand jury information relating to petitioners' tax liability derived from them.

Upon this application, Judge Foley, sitting in Albany, signed an *ex parte* order dated February 26, 1960, requiring the United States attorney to show cause on the judge's next scheduled motion day at Albany, March 21, 1960, why petitioners should not be granted the relief sought. The order stayed the United States attorney and all other agents and representatives of the United States "from submitting any evidence or information to a Grand Jury or from taking any other or further proceedings in relation to the above captioned petitioners pending the determination of this application * * *". At the same time the judge signed an order, also *ex parte*, granting petitioners leave under Fed.R. Civ.Proc. 26(a), 28 U.S.C., to serve notice of the taking of depositions of four revenue agents prior to the expiration

of 20 days after the commencement of the action on the ground "that their testimony is desired for use at the hearing of petitioners' motion to suppress illegal evidence * * *, and that it is essential that their testimony be taken prior to such hearing." Pursuant to such leave petitioners served notice that the depositions would be taken on March 8, 1960 and a subpoena commanding a special agent to bring copies of the manuals and instruction to revenue agents and special agents, "all documents, papers, books, records, memoranda, reports, diaries and objects maintained or obtained" by two agents, and "copies or extracts of books and papers made by them as a result of examinations or investigations" relating to the tax affairs of the petitioners.

When Judge Foley arrived in Syracuse on March 1, 1960, to commence a trial term, an assistant United States attorney asked him to vacate the order of February 26. The judge declined to do this but signed an order, supported by affidavits of the United States attorney and two revenue agents, requiring the petitioners to show cause on March 7 "why an order should not be made dissolving the injunction and vacating the order to show cause granted by this Court on the 26th day of February 1960." Petitioners submitted answering affidavits on the return day. After considering the affidavits and hearing counsel, Judge Foley, on March 8, 1960, made a Memorandum-Decision and Order, 186 F.Supp. 418, refusing to dissolve the stay (although modifying it to permit the institution of a complaint before a United States Commissioner under 6531 of the Internal Revenue Code of 1954, 26 U.S.C. § 6531, to toll the statute of limitations) and reserving decision as to vacating the original order to show cause until the hearing. From this the United States appeals.

We meet at the outset the question, not discussed by the parties, whether the order is appealable. Manifestly the order was not final; hence it is not appealable under 28 U.S.C. § 1291. However, the order of February 26 contained language of restraint, and we must consider whether the order of March 8 is an interlocutory order "refusing to dissolve or modify injunctions" and therefore appealable within 28 U.S.C. § 1292(a)(1).

■■ If appealability were governed by 28 U.S.C. § 1292(a)(1), we would be required to determine whether the February 26 order was a temporary restraining order or a preliminary injunction. For "In a civil action a restraining order *qua* restraining order is non-appealable," 7 Moore, Federal Practice, ¶ 65.07, at 1649 (2d ed. 1955); Schainmann v. Brainard, 9 Cir., 1925, 8 F.2d 11, whereas a preliminary injunction is. However, "the label put on the order by the trial court is not decisive; instead the courts look to such factors as the duration of the order, whether it was issued after notice and hearing, and the type of showing made in obtaining the order." 3 Barron & Holtzoff, Federal Practice and Procedure, § 1440, at 509 (Wright ed. 1958). The authors aptly add, "Application of these tests is not easy to fathom." Fed.R.Civ.Proc. 65(b) provides that any temporary restraining order granted without notice "shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period * * *" Sims v. Greene, 3 Cir., 1947, 160 F.2d 512, held that an order originally issued on December 2, 1946, extended on December 20 without objection until January 14, 1947, and thereafter continued from time to time until February 3, during which time a long evidentiary hearing was held, had ceased to be a temporary restraining order and had become a preliminary injunction subject to appeal under what is now 28 U.S.C. § 1292(a)(1). On the other hand, Connell v. Dulien Steel Products, Inc., 5 Cir., 1957, 240 F.2d 414, 415, certiorari denied, 1958, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074, held that an order labelled a "temporary restraining

order" did not cease to be one because it restrained pending decision on a motion for a preliminary injunction which was scheduled to be heard 28 days thence, see 71 Harv.L.Rev. 550 (1958). And the Third Circuit has decided similarly with respect to a stay that was to remain in effect until the application for the temporary injunction was heard, when the appeal was taken prior to the expiration of 20 days. Pennsylvania Motor Truck Ass'n v. Port of Philadelphia Marine Terminal Ass'n, 1960, 276 F.2d 931. Here the minimum period of restraint was 24 days, only four more than the 20 permitted by Rule 65(b), a period that might have been accepted by consent under the express terms of the rule or would undoubtedly have been shortened had the court been requested to do so; the order was issued without notice and hearing; and the judge had not made the preliminary determination of the rights of the parties required for issuance of a temporary injunction. On the other hand, as demonstrated by the order permitting petitioners to take depositions, the hearing scheduled for March 21 was evidently intended to be the final hearing, so that the stay may be said to have performed the traditional office of an injunction *pendente lite,* "to preserve the *status quo* pending final determination of the action after a full hearing." 7 Moore, Federal Practice, ¶ 65.04, at 1625 (2d ed. 1955).

The difficulty in resolving these conflicting considerations suggests that we may not be asking the right question and that we ought examine a more basic one, namely, whether 28 U.S.C. § 1292(a) (1) applies at all to preliminary stays in summary proceedings to suppress illegally obtained evidence. This in turn requires analysis of the nature of a motion to that end made before any criminal proceeding is pending.

Fed.R.Crim.Proc. 41(e) provides that "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained" on various grounds therein specified. It directs that "The judge shall receive evidence on any issue of fact necessary to the decision of the motion." The rule embodies a practice which long antedated it but whose jurisdictional character, at least in those cases where the motion precedes the criminal proceeding to which the evidence relates, has been little discussed. We have said that such a motion "was in effect a complaint initiating a civil action," Lapides v. United States, 2 Cir., 1954, 215 F.2d 253, 254; Russo v. United States, 2 Cir., 241 F.2d 285, 287, certiorari denied, 1957, 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33, and so it is in the sense with which the Court was there mainly concerned, namely, its independence from the later criminal proceeding and the consequent appealability of a final order therein under 28 U.S.C. § 1291. However, the jurisdictional grants in 28 U.S.C. §§ 1331–1358 will be searched in vain for any rubric under which such a motion falls, in the absence of any allegation of jurisdictional amount that would bring it under § 1331, see Centracchio v. Garrity, 1 Cir., 1952, 198 F.2d 382, 385, certiorari denied, 1952, 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672. The classical exposition of the nature of such a motion is Judge Hough's statement in United States v. Maresca, D.C. S.D.N.Y.1920, 266 F. 713, 717:

"Whenever an officer of the court has in his possession or under his control books or papers, or (by parity of reasoning) any other articles in which the court has official interest, and of which any person (whether party to a pending litigation or not) has been unlawfully deprived, that person may petition the court for restitution. This I take to be an elementary principle, depending upon the inherent disciplinary power of any court of record.

"Attorneys are officers of the court, and the United States attorney does not by taking office escape from

this species of professional discipline. Thus power to entertain this motion depends on the fact that the party proceeded against is an attorney, not that he is an official known as the United States attorney. It is further true that the right to move does not at all depend on the existence of this indictment; it might be made, were no prosecution pending."

See also Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 355, 51 S.Ct. 153, 75 L.Ed. 374; Foley v. United States, 5 Cir., 64 F.2d 1, 3, certiorari denied, 1933, 289 U.S. 762, 53 S.Ct. 796, 77 L.Ed. 1505.

When motions under Rule 41(e) or the practice preceding it are independent of a criminal proceeding, the courts entertain appeals from final orders denying the return of papers, Perlman v. United States, 1918, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Essgee Co. v. United States, 1923, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; Go-Bart Co. v. United States, supra, or granting such return, Burdeau v. McDowell, 1921, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048. In contrast, when the motion is made after indictment, neither its denial, Cogen v. United States, 1929, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275, nor its grant, Carroll v. United States, 1957, 354 U.S. 397, 77 S.Ct. 1332, 1 L.Ed.2d 1442, is appealable. We have found no case sustaining appellate jurisdiction from any order in such a proceeding save a final one.

We do not think an order, made in the exercise of "the inherent disciplinary power" of the court, directing one of its own officers to refrain from using books and papers claimed to have been unlawfully taken until the court can determine his right to use them, is an order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions" within 28 U.S.C. § 1292(a)(1), even if the stay runs beyond the 20-day period permitted for temporary restraining orders by Fed.R.Civ.Proc. 65(b) and we should assume that the Rule is fully applicable.[1] Section 1292(a)(1) stems from § 7 of the Evarts Act, c. 517, 26 Stat. 828, providing, by way of exception to the requirement of finality, "That where, upon a hearing in equity in a district court, or in an existing circuit court, an injunction shall be granted or continued by an interlocutory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the circuit court of appeals, an appeal may be taken from such interlocutory order or decree granting or continuing such injunction to the circuit court of appeals"; orders denying such injunctions were first added in 1895, c. 96, 28 Stat. 666. The section as it appeared in the Judicial Code of 1911, § 129, 36 Stat. 1134, continued to be prefaced by the words "Where upon a hearing in equity in a district court," and the omission of the words "in equity" in the Act of February 13, 1925, 43 Stat. 937, "was not intended to remove that limitation." Schoenamsgruber·v. Hamburg American Line, 1935, 294 U.S. 454, 457, fn. 3, 55 S.Ct. 475, 477, 79 L.Ed. 989; see Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 180, fn. 6, 75 S.Ct. 249, 99 L.Ed. 233. Whatever might be the case when a person seeking

1. The case for applicability is that the action is "of a civil nature," Fed.R.Civ. Proc. 1, since "Whether an action is civil or criminal by nature is determined by the sanctions sought to be imposed," 7 Moore, Federal Practice ¶ 81.02, at 4431 (2d ed. 1955); see United States v. Stangland, 7 Cir., 1957, 242 F.2d 843, 846, and does not come within any of the exclusions of Rule 81. In Russo v. United States, supra, 241 F.2d at pages 287–288, we held Rule 26(a) applicable in a proceeding like the present. However, since the Federal Rules of Civil Procedure were "primarily designed for plenary litigation," 7 Moore, Federal Practice ¶ 81.06, at 4442 (2d ed. 1955), it does not necessarily follow that they must be literally applied to proceedings under Fed.R.Crim.Proc. 41(e) which are summary in character, even when these are pre-indictment. Cf. Goodyear Tire & Rubber Co. v. N.L.R.B., 6 Cir., 1941, 122 F.2d 450, 451, 136 A.L.R. 883.

the return of property alleged to have been illegally seized proceeds by a plenary action under an appropriate jurisdictional statute, see Goodman v. Lane, 8 Cir., 1931, 48 F.2d 32; cf. Eastus v. Bradshaw, 5 Cir., 94 F.2d 788, certiorari denied, 1938, 304 U.S. 576, 58 S.Ct. 1045, 82 L.Ed. 1539, such language is hardly apt to describe a preliminary step in a special proceeding where, in the course of exercising its "disciplinary powers" "summarily to determine" what one of its own officers should do, Go-Bart Co. v. United States, supra, 282 U.S. at page 355, 51 S.Ct. at page 157 the court instructs him, *ex parte*, not to take action pending the determination that might impair the court's ability to grant full relief. Such a proceeding normally would not have the three stages—temporary restraining order, preliminary injunction, and final decree—characteristic of "a hearing in equity"; the first evidentiary hearing would usually be the last and the proceeding would generally be determined before an appeal from an interlocutory order could be heard.

The Baltimore Contractors case itself teaches that not every request for an order containing words of restraint is one for an injunction within § 1292(a)(1). So does Fleischer v. Phillips, 2 Cir., 264 F.2d 515, 516, certiorari denied, 1959, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030, where we said, also dealing with officers of the court, that "the prayers for injunctive relief add nothing to the orders denying the motions and render neither of them automatically appealable under 28 U.S.C. § 1292(a)(1)." And United States v. Rosenwasser, 9 Cir., 1944, 145 F.2d 1015, 156 A.L.R. 1200, held that an order suppressing evidence and restraining the United States from using copies of the seized records or information derived therefrom in any proceeding of any kind, which was not appealable as final because it was sought only after the information had been filed, could not be appealed as an interlocutory order granting an injunction although literally it assuredly was.

Our holding that the order here sought to be reviewed is not appealable does not mean that district judges have unlimited discretion to stay the government or its agents from presenting evidence to a grand jury pending a hearing on a motion to suppress. Fed.R. Crim.Proc. 41(e) requires that evidence be taken on "any issue of fact necessary to the decision of the motion." It follows that evidentiary hearings should not be set as a matter of course, but only when the petition alleges facts which if proved would require the grant of relief. We find it somewhat hard to see how the petition here met this test, since the constitutional guarantees are not violated when taxpayers' books and records, voluntarily turned over to Treasury agents for examination, are found to contain evidence leading the government to assert criminal liability, Russo v. United States, supra; United States v. Sclafani, 2 Cir., 265 F.2d 408, certiorari denied 1959, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed. 2d 1534; Centracchio v. Garrity, supra; the fact that one of the agents was a special agent (whose presence, petitioners allege, shows an intent to develop facts leading to criminal prosecution) has been held irrelevant, Turner v. United States, 4 Cir., 222 F.2d 926, 930, certiorari denied 1955, 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742; and the only affirmative misrepresentation alleged as to the nature of the investigation postdated the voluntary delivery of the records. In those cases where an evidentiary hearing is required, the court should proceed in an expeditious manner consonant with the summary character of the remedy and with a recognition that "It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found." Cobbledick v. United States, 1940, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783. The possible expiration of a period of limitations is, of course, highly relevant to the exercise of the court's discretion. Abuses of discretion in or-

dering a hearing or in the scope or duration of a stay can be corrected by courts of appeals through the issuance of mandamus. 6 Moore, Federal Practice, ¶ 54.10 [4], at 87 (2d ed. 1955). Here, however, appellant has not requested such relief, see Zamore v. Goldblatt, 2 Cir., 1953, 201 F.2d 738, the stay was to continue only until the next motion day of the court in Albany, and the issue would doubtless have been settled long ago if the government had complied with the order to show cause instead of taking this appeal.

The appeal is dismissed for lack of appellate jurisdiction.

MOORE, Circuit Judge (dissenting).

This appeal tests the regularity of the proceedings instituted by the taxpayers (referred to as "the taxpayer") to enjoin the United States Attorney from submitting to a Grand Jury any evidence of any crime whatsoever, or taking any other proceedings, against them. The injunction thus has the effect of enjoining *pro tanto* the Grand Jury in its time-honored function of investigating crime. The reason asserted in the petition supporting this drastic request is in substance, that, although "petitioner, either personally or through employees in his office, did make available to said [Internal Revenue] agents all of his books, records and papers and those of his wife, including among others, daily log books, check books, bank statements, bank books, cancelled checks, stock records, books and papers," that he did not do so "for purposes of any criminal investigation."

The taxpayer sought a return of these papers and an injunction against their use (and leads therefrom) by an order to show cause pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. This Rule permits a person "aggrieved by an unlawful search and seizure" to move the district court for the return of the property and its suppression as evidence. Of the grounds specified in the Rule the only one possibly applicable is that "the property was illegally seized without warrant." The order was sought "to initiate this special proceeding." It was issued *ex parte* on February 26, 1960 and enjoined the government from submitting any evidence (regardless of any relationship whatsoever to the material sought to be suppressed) pending the determination of the application. Since the return date was March 21, 1960, the minimum period of injunction was 24 days. The date of entry of an order after decision could have extended this period substantially.

Simultaneously a motion was made, also without notice for an order pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, for leave to serve notice of taking depositions of various government agents prior to the expiration of 20 days after the commencement of "this action." The affidavit supporting this *ex parte* "civil procedure" motion recites that "this action" is the order to show cause under the "criminal procedure" rule. Again without notice this motion was granted.

On March 4, 1960, the court issued a further order to show cause "why an order should not be made dissolving the injunction" and vacating the first order of February 26th. On March 8th the court concluded that a hearing should be held and reserved decision on the motion to dissolve the injunction until the hearing had been held. From the order of March 8th the government appeals.

In summary, an order to show cause— at best a motion under section 41(e) of the criminal rules—containing a "without notice" injunction of 24 days or more simultaneously with its issuance is metamorphosized into a civil "action" on the basis of which another "without notice" order for leave to take depositions under section 26(a) of the civil rules is issued.

Under what authority of law is this baffling procedure conducted? Certainly some legal justification must be found before approving the steps here taken. Despite the fact that no jurisdictional sanction is given in any of the grants specified in 28 U.S.C.A. §§ 1331–1358, as

pointed out in Centracchio v. Garrity, 1 Cir., 1952, 198 F.2d 382, at page 385:

"it has long been accepted that where evidence, obtained by an unconstitutional search and seizure in violation of the Fourth Amendment, is in the hands of a United States attorney, a federal district court may entertain and grant relief on a petition, filed .even prior to any indictment, seeking a return of the papers or property unconstitutionally seized and the suppression of the same as evidence. (Citing cases)"

This court in Lapides v. United States, 2 Cir., 1954, 215 F.2d 253, at page 254, described a somewhat similar proceeding as follows:

"Appellant's 'motion' was in effect a complaint initiating a civil action seeking suppression of evidence said to have been illegally obtained and to restrain the United States Attorney from presenting such evidence to the grand jury. The suit thus began before any criminal proceedings by the government against appellant had been instituted, and his appeal was therefore not from an interlocutory order entered in the course of a criminal suit. Accordingly, the order denying his motion was a final and appealable order."

If the order to show cause be tantamount to a civil action (and apparently the taxpayer would so regard it by seeking to avail himself of the civil deposition rules), then the other civil rules are equally applicable. Federal Rules of Civil Procedure 65(b) specifically provides that every temporary restraining order "shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period."

The language of this Rule is significant. The restraining power of the court is restricted and by the words "shall expire" the order became self-terminating in 10 days, i. e., March 7th. No good cause for the permissive extension was shown nor was any extension granted. Therefore even if the injunction had had any effect under the guise of a temporary restraining order between February 26th and March 7th it could continue thereafter only as a preliminary injunction. The order of March 8th of necessity had to be an order "refusing to dissolve" an injunction. The fact that the court's memorandum-decision-order did not use the words "granted" or "denied" is not determinative. The injunction was continued by the order and hence must be regarded as a refusal to dissolve it.

The entire purpose of the temporary restraining order rule would be frustrated if it were allowed to be disregarded at will. Ten days was the maximum period during which the enjoined party was to be restrained without opportunity for appellate review. Over the years courts have become more and more reluctant to enjoin without notice; rules and statutes express this policy. The right of appeal from a preliminary injunction is a purposeful exception to the general rule requiring finality. Since "preliminary" by definition precedes "final," the presently imposed restraint must be preliminary because the order to be entered after any hearing will be final. Although I agree that an appeal cannot be taken from a temporary restraining order this limitation applies only to this type of order as authorized by law. The very "label" argument advanced by the majority cannot create an order which had no legal being after March 7th merely by calling it a temporary restraining order.

The trial court states that his powers of restraint are supported by precedent, citing In re Fried, 2 Cir., 161 F.2d 453, 1 A.L.R.2d 996; Application of Bodkin, D.C., 165 F.Supp. 25 and Lapides v. United States, 2 Cir., 1954, 215 F.2d 253.

Upon the appeals by the taxpayers and the government in Bodkin after a stipulation by the taxpayers "to grant the government all the relief to which it could be entitled on a successful appeal" the appeal was dismissed as moot. However, the district court's judgment was vacated and the complaint dismissed. This court specifically referred to our express disapproval of Bodkin in United States v. Sclafani, 2 Cir., 1959, 265 F.2d 408. Examining the Bodkin case, a situation most comparable to the present case appears, i. e., a motion to suppress and restrain under Federal Rule of Criminal Procedure 41(e), depositions under Federal Rule of Civil Procedure 26. The same grounds, in substance, were advanced, namely, that the original voluntary surrender of their books by the taxpayers for tax audit became involuntary when subsequently facts were thereby disclosed indicating criminal liability. The hearing must have been in the nature of a full-scale trial because over 1,000 pages of testimony were taken. Bodkin,[1] expressly disapproved, does not furnish a precedent as to procedure. Lapides, as here, was a pre-indictment order to show cause. As this court on review said, "Nothing in said order suggested that the hearing thus set was to be a preliminary hearing only" (215 F.2d 253, 256). Nor was any question there raised as to the nature of the injunctive provisions.

As to the substantive law, whether the papers on which the order to show cause was granted be regarded as a Rule 41(e) motion or as a complaint in a civil action or even as a unique hybrid, they must possess legal sufficiency. Giving to the taxpayer's affidavit the most liberal construction as a complaint and at the same time regarding the same papers as an application for a preliminary injunction pending trial and final judgment of the issues there tendered, it fails to meet the legal requirements for suppression. Stripped of its conclusory assertions, the taxpayer alleges that some time after he had voluntarily made available his books he was "shocked" when he was advised that as a result of the investigation criminal proceedings might be instituted, that he had thought, as the agents had represented, that a "routine" examination only was being made and that the agents had never "implied or said that there was the remotest possibility that either fraud or criminal proceedings were under consideration."

In Sclafani it was held that under quite similar circumstances "the failure to disclose the changing course of the investigation is not fraudulent or deceitful" (265 F.2d 408, 414) and that:

"A 'routine' tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission.

" 'Surely defendant was aware that, if a "routine audit" revealed evidence of criminal liability, the agent would not ignore it merely because he was primarily concerned with civil liability. * * * A statement that the purpose of an investigation is a "routine audit" is not the equivalent of a promise that only civil liability will be considered regardless of what the examination reveals. Nor would any accountant or businessman so understand it.' United States v. Wolrich, D.C.S.D. N.Y.1954, 119 F.Supp. 538, 540 (Dimock, J.).

"Moreover it is unrealistic to suggest that the government could or should keep a taxpayer advised as to the direction in which its necessarily fluctuating investigations lead. The burden on the government

1. "See United States v. Sclafani, 2 Cir., 265 F.2d 408, which expressly disapproves Matter of Bodkin, D.C.E.D.N.Y.

1958, 165 F.Supp. 25." 2 Cir., 266 F. 2d 56.

would be impossible to discharge in fact, and would serve no useful purpose."

The same principle was stated in Russo v. United States, 2 Cir., 1957, 241 F.2d 285 (Clark, then Chief Judge, Lumbard and Waterman, C. JJ.). The Fourth Circuit rejected a taxpayer's contention which the court stated as follows:

"The contention seems to be that revenue agents who secure the consent of a taxpayer to an examination of his books with intent to obtain evidence and use it in a criminal prosecution, are guilty of deceit unless they divulge their purpose, and that the obtaining of information in such a manner violates the Fourth Amendment and its introduction in evidence violates the Fifth Amendment; and even if the examination is begun solely to ascertain the civil liability of the taxpayer and evidence of crime is unearthed, the taxpayer must be warned and given an opportunity to withdraw his consent, or all information subsequently obtained is inadmissible in a criminal prosecution." Turner v. United States, 4 Cir., 1955, 222 F.2d 926, 930.

And in Centracchio v. Garrity, 1 Cir., 1952, 198 F.2d 382, at page 387, the Court said:

"On the face of the petition in the present case, and certainly on the evidence offered by petitioner at the hearing before the district court, it is clear that the evidence in question did not come into the possession of the government officials in violation of petitioner's rights under the Fourth Amendment. He voluntarily turned over the evidence, and made the disclosures, to the agents of the Internal Revenue Bureau, for the purpose of a determination of his income tax liabilities."

In conclusion I cannot reconcile the result reached by the majority with the language of the opinion. If, as they say, "Our holding that the order here sought to be reviewed is not appealable does not mean that district judges have unlimited discretion to stay the government or its agents from presenting evidence to a grand jury pending a hearing on a motion to supress," how can the discretion be limited except by appeal? Assume that a judge disregards the 10 days' temporary restraining order limitation and grants 90 days. The restrained party has no other recourse than to move to vacate. A refusal to vacate continues the injunction. If this order is not appealable, the discretion remains "unlimited." Add to this situation the ingredient that the supporting papers do not support as a matter of law. How can relief against an improper injunction be secured except by appeal? It is all very well to say what difference does it make whether matters are called motions or actions, preliminary, temporary, civil or criminal but far more is at stake than mere words. Just as on the sea experience has proven that a maximum of safety for all is obtained by the formulation of definite rules of navigation and adherence thereto, so is it equally important that the procedures specified in legal rules be followed. The opinion of Judge Biggs of the Third Circuit (a circuit which has rather taken the lead in strict limitation upon appealability) is most apposite. Sims v. Greene, 3 Cir., 1947, 160 F.2d 512. There the district court had disregarded the time provisions of Rule 65(b). He said at page 516:

"It is settled that no temporary restraining order may be continued beyond twenty days unless the party against whom the order is directed consents that it may be extended for a longer period."

Denying the motion to dismiss the appeal and reversing the order, the court concluded at page 517:

"In our opinion the restraining order now in effect in the District Court must be treated as a temporary injunction, issued without the consent of the defendant, in the face

of his motion to dissolve it, and contrary to the provisions of Rule 52 (a). It is clear that an appeal lies from a temporary injunction. Deckert v. Independence Shares Corporation, 311 U.S. 282, 61 S.Ct., 229, 85 L.Ed. 182. The appeal at bar therefore may not be dismissed and the order restraining the defendant must be reversed."

Insofar as the decision of the Fifth Circuit in Connell v. Dulien Steel Products, 5 Cir., 1957, 240 F.2d 414 (temporary restraining order issued after notice) differs from Sims v. Greene, I believe that the Third Circuit's interpretation better follows the words and intent of the Rule.[1]

Following the type of relief granted in Sims v. Greene, I would hold that the order of March 8th is an order refusing to dissolve an injunction and hence appealable. On the appeal I would vacate the stay order of February 26th as extended in effect by the order of March 8th. I concur with the majority in their views with respect to the lack of sufficiency of the petition because the law is clear that upon the facts therein alleged the taxpayer is not entitled to an order of suppression. In connection with the pre-indictment preliminary attacks upon evidence, which are apparently becoming increasingly popular, it might be well to remember the words of a distinguished jurist (L. Hand, C. J.) in In re Fried, 2 Cir., 1947, 161 F.2d 453, 465:

"It would be an intolerable burden upon the prosecution of crime, if it were possible to test in advance the competency of evidence which an accused, to say nothing of a prospective accused, might be able to show was likely to be used against him. The protection of the individual from oppression and abuse by the police and other enforcing officers is indeed a major interest in a free society; but so is the effective prosecution of crime, an interest which at times seems to be forgotten."

[1]. The recent case in the Third Circuit, Pennsylvania Motor Tr. Ass'n v. Port of Phila. M. T. Ass'n, 3 Cir., 1960, 276 F.2d 931, is not to the contrary. There the appeal was argued and dismissed within the permissive period authorized by Rule 65(b).