Donald R. LORD and Bernard G. McGarry, Sr.

v.

Alvin M. KELLEY, Robert J. Calhoun, John B. Flattery, Charles R. McNally, and Donald Young.

Civ. A. No. 63–932.

United States District Court
D. Massachusetts.
Nov. 19, 1963.

Lawrence F. O'Donnell and John Warren McGarry, Boston, Mass., for plaintiffs.

Murray Falk, Asst. U. S. Atty., W. Arthur Garrity, Jr., U. S. Atty., for defendants.

WYZANSKI, District Judge.

After being twice amended, the complaint in this case has become in effect principally, though not exclusively, a pre-indictment pleading under Federal Rule of Criminal Procedure 41(e) by Lord, as possessor, and by McGarry and other individuals, partnerships, and corporations listed in paragraph XIII of the complaint, as owners, to return records seized from Lord, by Flattery and others, and to suppress the evidentiary use of those records in any federal criminal proceeding which may be undertaken against the complainants.

These are the underlying facts.

1. McGarry and others listed in paragraph XIII of the complaint (herein

called the clients) entrusted their records to a father and son, the late Alfred H. Lord and the present plaintiff Donald R. Lord, both being independent professional accountants, to prepare their tax returns. There is no credible evidence that any client, expressly or impliedly, authorized either of the Lords to permit any agent of the Internal Revenue Service to examine or to take those records.

2. Flattery, a special agent of the Internal Revenue Service, signed a summons, dated April 18, 1962, addressed to Lord, requiring him to appear on April 30 at 55 Tremont St., Boston before Flattery to give testimony relating to the tax liability of Bernard G. and Marie G. McGarry, and to bring with him designated records of the clients. Without initially serving this summons, Flattery, with two other special agents, went to Lord's Dedham home which was also his office.

3. Flattery was a man of sufficient experience so that he knew that unless otherwise authorized by his principal, or unless otherwise directed by a judicial order, an accountant in private practice has an obligation not to turn over his principal's records to a third party. Nonetheless, Flattery, after informing Lord that it would be prudent for him to cooperate with the special agents unless he himself wished to get into trouble, demanded the right to take his clients' records to the offices of the Internal Revenue Service. Lord, after indicating that he lacked authority voluntarily to surrender the documents, complied with the demand because he feared that if he did not do so he himself, regardless of his innocence, would be investigated or subject to proceedings initiated by the government. His compliance was not voluntary, but responded to Flattery's threats.

4. When he turned the records over to Flattery, Lord asked for some evidence to show his clients that he had yielded to compulsory process. Then, for the first time, Flattery served upon Lord the summons which, of course, was merely a command that at a date 12 days thereafter Lord should produce the records in Boston.

Upon the basis of the foregoing findings, this Court arrives at the following ultimate findings and conclusions.

■ The Fourth Amendment to the United States Constitution guarantees "The right of the people to be secure in their * * * papers, and effects, against unreasonable searches and seizures." When a person complains of an unreasonable search, it does not follow automatically that this Court has jurisdiction to hear the case. Without examining all possible bases for jurisdiction, it is sufficient in the case at bar to cite Rule 41 (e) of the Federal Rules of Criminal Procedure which provides that "A person aggrieved by an unlawful search and seizure may move the district court * * * for the return of the property and to suppress for the use as evidence anything so obtained * * *."

■ It might be supposed that Rule 41(e) gives a federal court jurisdiction to hear an aggrieved person only if he has been indicted, and if his grievance is presented as an interlocutory matter in the course of a criminal proceeding prosecuted by the United States against him as a defendant. But it is plain that this is an incorrect supposition, and that even before he has been indicted an aggrieved person may invoke the jurisdiction of a district court under some circumstances. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614.

The first cases in which an aggrieved person was permitted to invoke the jurisdiction named the United States as the opposing party and involved an alleged unlawful seizure by a United States Attorney. Jurisdiction was sustained on the theory that the United States Attorney as a lawyer was an officer of the court subject to the inherent disciplinary power of any court of record. Go-Bart Importing Co. v. United States, 282 U.S. 344, 354–355, 51 S.Ct. 153, 75 L.Ed. 374; Austin v. United States, James E. Holshouser, 4th Cir., 297 F.2d 356; Grant v.

United States, 2nd Cir., 282 F.2d 165, 168; Centracchio v. Garrity, 1st Cir., 198 F.2d 382, 386; United States v. Maresca, S.D.N.Y., 266 F. 713, 717. That exercise of jurisdiction was certainly, to say the least, anomalous. No Act of Congress specifically authorized the federal court to take jurisdiction. Grant v. United States, supra. There was no criminal or civil proceeding in which it could be an interlocutory stage. Centracchio v. United States, supra. The United States as a sovereign had not agreed to be sued. If the aggrieved person were successful, the propriety of a court restraining the United States, as distinguished from its officers, was not clearly established. And not everyone would agree that the prosecutor's unlawful seizure involved his conduct qua attorney and hence subjected him to a court's disciplinary power.

■■■ Yet, whatever may be the theoretical difficulties, a district court at this late date must conclude that if the federal prosecutor unlawfully seizes property for use in a criminal prosecution, then even before an indictment is returned (that is, when the criminal prosecution is *in posse* but not *in esse*) the party aggrieved has an "independent" action. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614. Such an action is a civil matter and should be so docketed. United States v. Koenig, 5th Cir., 290 F.2d 166, 169; Centracchio v. Garrity, 1st Cir., 198 F.2d 382, 385. Cf. Bolger v. United States, et al., S.D.N.Y., 189 F.Supp. 237, 242. Yet it may not in all aspects be subject to the Federal Rules of Civil Procedure. Di Bella v. United States, 369 U.S. 121, 129, note 8, 82 S.Ct. 654, 7 L.Ed.2d 614. And the adjudication of the trial court is immunized from appellate review, not by statutory but by judicial exception. Di Bella v. United States, Ibid., particularly pp. 132–133 [pp. 132–133 of 369 U.S., pp. 660–661 of 82 S.Ct., 7 L.Ed.2d 614].

Perhaps it is not too late to suggest that the best way of beginning such an action is to name as the party respondent the prosecutor and not the United States. See Go-Bart Importing Co. v. United States, 282 U.S. 344, 355, lines 8–10, 51 S.Ct. 153, 75 L.Ed. 374. At any rate if an injunction is to be issued, it would seem that it should bind only individuals and not the sovereign. But it cannot be denied that there are many cases where no such limitation appears to have been recognized.

■■ It certainly is not inappropriate that the initial pleading should take the style of a "complaint" rather than a "motion". A "motion" inevitably suggests that there is already in being some case in the course of which the motion is pleaded as a second or later procedural step. The word "complaint" or "petition" is a more correct description of the opening gambit.

■ But in the case at bar the difficulty jurisdictionally is that the complaint does not name the federal prosecutor, or even, as in some of the heretofore cited cases, the United States. The only respondents are federal enforcement agents of the Internal Revenue Service. They are not members of the bar of this Court and in that sense officers of this Court subject to its disciplinary power. Nor are the defendants subject to the control of the United States District Attorney. See Go-Bart Importing Co. v. United States, 282 U.S. 344, 354, last 2 lines, 51 S.Ct. 153, 75 L.Ed. 374.

It might have been thought better not to embrace within the anomalous jurisdiction just described any alleged unlawful seizures by federal enforcement officers. Perhaps against them could be invoked some statutory basis of federal jurisdiction (see Cleary v. Bolger, 371 U.S. 392, 396, footnote 7, 414, footnote 3, 83 S.Ct. 385, 9 L.Ed.2d 390); or it might be sufficient for the aggrieved person to be left with an objection to the introduction of the seized property or its fruits in evidence in any administrative, civil, or criminal trial.

However, it seems to this Court that the Supreme Court either has extended

or will extend the anomalous jurisdiction so as to reach unlawful seizures by a federal agent connected with the enforcement of law, who should have observed "standards for law enforcement" established by "the federal Rules governing searches and seizures." Rea v. United States, 350 U.S. 214, 217–218, 76 S.Ct. 292, 294, 100 L.Ed. 233 (federal narcotics agent); Bolger v. Cleary, 2nd Cir., 293 F.2d 368, 369 (interpretation by Clark C. J., of Rea). See, however, the diverse views of Harlan J. and Brennan J. in Cleary v. Bolger, 371 U.S. 392, 396–398, 414, 83 S.Ct. 385, 9 L.Ed.2d 390. Compare Note, 76 Harv.L.Rev. 1656, 1664–1666; Note 77 Harv.L.Rev. 62, 149–152. In Rea after a defendant had successfully moved in a federal court for the return and suppression of evidence, that court, in connection with a contemptuous defiance of that order, was held to have jurisdiction to enjoin a specific federal enforcement agent from using "his illegal search and seizure as the basis of testimony in the state court." Rea v. United States, 350 U.S. 214, 217, 76 S.Ct. 292, 294, 100 L.Ed. 233. That holding may be viewed narrowly, as Justice Harlan and the Harvard Law Review notes suggest, or may be broadly applied as Justice Brennan and Judge Charles E. Clark agreed in upholding Judge Frederick van Pelt Bryan's judgment in Bolger v. United States of America, Robert G. Anderson, Secretary of the Treasury of the United States of America, Customs Agents William J. O'Shea and Thomas F. Loughman, Customs Enforcement Officers Walter J. Conlon and Joseph E. Patterson and Dorothy T. Zecha, Shorthand Reporter, in charge of office of Supervising Agent of Customs, Port of New York and Michael Cleary, S.D.N.Y., 189 F.Supp. 237, 242 (customs agents). To this Court, the indications are that the Supreme Court intends that where a federal criminal prosecution is probable a federal trial court shall have non-statutory jurisdiction to enjoin federal enforcement officers from holding or using property they unlawfully seized.

Such non-statutory jurisdiction must be exercised subject to equitable principles. Centracchio v. Garrity, 1st Cir., 198 F.2d 382. Often—perhaps usually—it will be more prudent for a trial court to await the return of an indictment before granting any relief. For in many cases the trial court may not be persuaded that the substantial risk facing the aggrieved person is a criminal prosecution, as distinguished from an administrative or civil proceeding.

Here, however, this Court is persuaded that indictment is probable, and that jurisdiction should be exercised.

Moreover, not merely McGarry and the other clients, but the younger Lord have a standing to bring a complaint. The clients owned the records and obviously had an immediate interest. Lord, as their possessor, also had an interest judicially recognized. Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697.

Jurisdiction and standing to sue being found to exist, it is appropriate to turn to the merits.

In the instant case no adequate basis for the seizure of the clients' records existed. There was no search warrant. The summons does not purport to be a warrant or its equivalent; and in any event it only commands Lord to bring the records with him to another city 12 days later than the date the records were seized. There is no statutory or common law authority under which Flattery claims, or ever did claim, the right to seize the records. There was no arrest to which the seizure could be incidental. Nor was consent effectively given to the taking of those records.

If it were necessary to decide the point, this Court would hold that Lord himself never gave consent. Intimidated by Flattery's statements and implied threats, Lord did not regard himself as having a free choice whether to allow Flattery to remove the records. When a special agent of the Internal Revenue Service tells an accountant who, so far as ap-

pears, is quite innocent of wrongdoing, that unless he turns over his clients' records and cooperates with the Internal Revenue Service the accountant will be in trouble, the agent is close to extortion. That Flattery did exercise unlawful pressure is proved by Lord's credible testimony.

But even if Lord had freely consented to allow Flattery to remove the records, that consent would have been of no significance. Lord was an agent to whom the clients had entrusted their records for the sole purpose of preparing their tax returns. He lacked, and Flattery, as an experienced special agent familiar with the usual scope of an accountant's authority, could infer that Lord had not been given, express or implied power to deliver those records to third persons. Indeed Lord initially told Flattery that he had no authority from his clients to hand over documents. Yet, with this awareness, Flattery induced Lord in breach of his duty to his principals to deliver to the Internal Revenue Service their records.

Even if Flattery had not known of the limitation on Lord's authority, inasmuch as the delivery by Lord on Flattery's demand was beyond the scope of Lord's actual or apparent authority, such delivery was without the consent of the clients and the taking by Flattery constituted an unlawful seizure violative of the clients' rights under the Fourth Amendment. United States v. Lagow, S.D.N.Y., 66 F.Supp. 738, aff'd 2nd Cir., 159 F.2d 245. See cases collected in Note 31 A.L.R. (2d) 1088, 1091 and in Note 221 to U.S. C.A. reprint of U.S. Constitution, Amendment 4.

A fortiori, inasmuch as Flattery was aware of the limitation of Lord's authority, Flattery's conduct amounted to a tortious conversion of the clients' records and a tortious inducement of breach of confidential contractual relations between the clients and the accountant, Union Old Lowell Nat. Bank v. Paine, 318 Mass. 313, 325, 61 N.E.2d 666; Restatement, Agency, 2nd, § 312, comments c and d, § 395. Hence, on that further ground, Flattery's acquisition of the clients' records was an unlawful seizure violative of the clients' rights under the Fourth Amendment.

Defendants make much of the asserted relevance of their statutory right as delegates of the Secretary of the Treasury "[t]o examine any books * * * material to such inquiry" in a tax matter. 26 U.S.C. § 7602. No doubt, by proper application to a Court of competent jurisdiction, the agents of the Internal Revenue Service could have that right enforced, even if the taxpayers' or clients' records were in the hands of an accountant. But here the suggestion is that, unarmed with any judicial or administrative order, without the consent of a taxpayer, and without giving him a chance to be heard, an Internal Revenue Service agent may examine any of the taxpayer's records, even those in the hands of an independent professional agent for a limited purpose. There is no need for this Court to rule upon that suggestion in the case at bar, for here the complaint is not against looking at the records before taking them, but at taking them and then looking.

The seizures having been unlawful, this Court must grant the prayer that there shall be returned to the clients, or, rather, their agent, Lord, their records. But it does not automatically follow that it is appropriate for this Court to suppress the use of these records in evidence at any future criminal or other trial.

It is to be recalled that Flattery knew of these records before they were delivered to him. More significantly, he had already signed a summons covering those records. Had he waited patiently, the records, no doubt, would have been produced in response either to the administrative summons or to a judicial order enforcing such administrative summons— for it is difficult to imagine any excuse for non-production of records so obviously relevant to a standard administrative procedure.

■ The only ground for suppressing the use of these records in evidence is not to allow the Government to gain advantage from violating the Bill of Rights and those high standards of fair play which should govern men entrusted with official power. The owner of the records is entitled to be as well off as if Flattery had not unlawfully seized those papers, but he is not entitled to be any better off. He is not entitled to gain perpetual immunity from ever responding, in any future criminal proceeding or civil suit or administrative, tax inquiry, to an appropriate summons to produce those records which the tax statute require him to keep and which before the unlawful seizure the Government knew he had.

■ If it be argued that the Internal Revenue Service should be taught a lesson and penalized for Flattery's misconduct, there are many answers, of which the best is that exclusionary rules of evidence are designed not as punishment but to prevent the public prosecutor from using "dirty hands" to achieve a conviction. Moreover, Flattery has acknowledged his error in open court, and it is unlikely that, at least in this District, Internal Revenue Service special agents will soon again, without a warrant, subpoena, or summons, take from accountants their clients' records unless the Internal Revenue Service has proof that the accountants are acting with the express or implied authority of their principals.

■ So that the complainants may be as well off as, but not better off than, before the unlawful seizures, this Court's order will enjoin any defendant or any federal agent in concert with him from using in any proceeding, criminal, civil, or administrative, federal or state, information or clues derived from the records while Flattery and his associates in the Internal Revenue Service were holding them. Cf. Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233. But nothing in that injunction shall preclude the United States or its agents from requiring, by appropriate warrant, subpoena, summons, or other due process of law, a complainant to produce any record covered by the summons which Flattery signed before he made the unlawful seizure, or shall preclude the United States or its agents from using the contents of or clues furnished by a production later than November 19, 1963. If it be said that this Court's order calls to mind Southey's poem on the Battle of Blenheim, the only response is that while the complainants may be disappointed that they have not won immunity, they have vindicated the right of an independent accountant's clients not to have their papers taken by arbitrary, high-handed methods of tax enforcement.

■ This Court will not grant so much of the complainants' prayer as seeks to suppress oral statements alleged to have been made by Lord at the time Flattery examined and seized the records or at other times. No adequate evidence of any such oral statements was offered. Nor is it clear that the clients have such an interest in those statements as to give them a *locus standi*. Lord himself might have a standing to be heard. See Judge Learned Hand in In re Fried, 2nd Cir., 161 F.2d 453, 465, 1 A.L.R. 2d 996. But the jurisdiction of this Court to enjoin the use of a coerced statement, were its existence adequately proved, is a subject not free from doubt. See Frankfurter J., in Di Bella v. United States, 369 U.S. 121, 128, 82 S.Ct. 654, 7 L.Ed.2d 614. In this circuit equitable jurisdiction, at least, has been denied. Centracchio v. Garrity, 1st Cir., 198 F.2d 382, 386–389. Accord. Benes v. Canary, 6th Cir., 224 F.2d 470. Elsewhere even federal jurisdiction has been questioned. See Harlan J. in Cleary v. Bolger, 371 U.S. 392, 396, footnote 7, 398–399, 83 S.Ct. 385, 9 L.Ed.2d 390; and Friendly J. in Grant v. United States, 2nd Cir., 282 F.2d 165, 168, col. 2. But those authorities may not represent the views of the Supreme Court today. See Brennan J. in Cleary v. Bolger, 371 U.S. 392, 414, footnote 3, 83 S.Ct. 385, 9 L.Ed.2d 390.

So much of the complaint granted as prays for the return of complainants'

records to Lord, and for the suppression from use in evidence by the Government of any information or clues gathered while those records were in the Government's custody, without prejudice to the right of the Government hereafter to proceed by warrant, summons, or other due process to require complainants to produce the records covered by Flattery's subpoena.