**WHITE FABRICATING COMPANY,**
Diversified Industries, Inc.,
Plaintiffs–Appellants,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 89–3245.

United States Court of Appeals,
Sixth Circuit.

Nov. 8, 1989.

Decided May 18, 1990.

J. Michael Murray (argued), Lorraine R. Baumgardner, Brooke F. Kocab, Berkman, Gordon, Murray & Palda, Cleveland, Ohio, for plaintiff-appellant.

Gary D. Arbeznik, John B. Gibbons, Office of the U.S. Atty., Cleveland, Ohio, John A. Michelich (argued), Janis Kockritz, Of-

fice of the Dept. of Justice, Crim. Div., Washington, D.C., for defendant-appellee.

Before MERRITT, Chief Judge; WELLFORD, Circuit Judge; and DeMASCIO,[*] Senior District Judge.

WELLFORD, Circuit Judge.

On June 29, 1988, a magistrate in the Northern District of Ohio issued five search warrants authorizing the search of business premises belonging to plaintiffs, White Fabricating Company (White) and Diversified Industries, Inc. (DI), and of a white van belonging to White, as well as the seizure of various business records of the appellants and a quantity of video tapes.

The warrants authorized the seizure of copies of some fifty video tapes, various banking records, all records pertaining to the purchase and maintenance of the fifty video tapes, and all records relating to correspondence and transactions between the plaintiffs and twenty-four organizations or persons affiliated or allegedly associated with plaintiffs in the videotape business. In addition, the warrants authorized the search for and seizure of any packages containing the fifty video tapes, any other information relating to these tapes, any records which identified individuals involved in the processing of the video tapes, various employment records, all records identifying owners, stockholders, or directors of the plaintiffs' business entities, U.S. currency, any records relating to the accounting of monetary profits obtained from "peep show" machines, any printing device used to make labels, a log book relating to the issuance of keys to the machines, and a certain rubber stamp.

The warrants were supported by a sixty-one-page affidavit signed by James Larkin, an FBI agent. The affidavit asserted that the plaintiffs were involved in a pattern of racketeering activity, interstate transportation of obscene material and transportation of obscene material for sale and distribution, conspiracy to defraud the United States, money laundering, and aiding and abetting in these criminal activities. The allegations contained in the affidavit were based on a six-month investigation by the FBI which involved the plaintiffs and two other companies. The investigation disclosed a pattern of weekly shipments of allegedly obscene video tapes from Cleveland, Ohio to adult book stores and peep shows throughout the United States.

The investigation revealed that DI manufactured video peep show booths which were subsequently installed in adult book stores. DI also supervised regional companies that oversaw peep show operations in their various geographic areas. These service companies would receive the video tapes, place them in a video machine in a peep show booth, occasionally service the machine, keep records of profits generated from the machines, and send back to DI a certain percentage of the proceeds generated. The investigation also revealed a meticulous method of accounting for profits which included the use of locked cash boxes which required keys to open, profit and balance sheet records, extensive use of cashier's checks, and the disbursal of deposits of cash into a number of banks to avoid the $10,000 minimum reporting requirement imposed on these banks.

White was allegedly one of DI's service companies. The investigation indicated that White was substantially engaged in the duplication, installation, and distribution of the allegedly obscene video tapes which were placed in the various peep shows booths. White would first receive approximately fifteen "master" video tapes, which White would duplicate, using some one hundred video cassette recorders.[1] White's employees would then package the video tapes for shipment to adult

---

[*] The Honorable Robert E. DeMascio, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Each weekly set of tapes was called a "volume" or "library" with an assigned number corresponding to the week of the year. Each set of fifteen videos normally contained depictions of explicit and even deviant sexual activity. Each individual video bore a label identifying the volume, the date, and a short version of its title.

book stores scattered throughout the country.

Government agents, for five weeks, monitored the shipment of video tapes from White to a "cooperating witness," an employee or associate of one of the plaintiffs. His particular job allegedly involved receiving the shipment of video tapes from White in Cleveland, and then installing the various duplicated video tapes in adult book stores in a particular city. On approximately June 1, 1988, this cooperating individual allegedly began to allow law enforcement officials to examine the video tape cassettes and to make copies of them for subsequent viewing. The government agents viewed seventy-five different tapes, drafting detailed written descriptions of the contents of fifty video tapes.

Based on this information, along with other information allegedly supplied by cooperating witnesses, Agent Larkin concluded that probable cause existed to support the search warrants authorizing the search of the plaintiffs' premises. Written descriptions of the content of the allegedly obscene fifty video tapes were furnished to the magistrate, along with the extensive affidavit. Based on the affidavit, the fifty written descriptions, and after personally viewing four of the video tapes, the magistrate issued the warrants. Armed with the warrants, the FBI agents proceeded to search the premises of both DI and White and also White's van. The searches yielded a substantial amount of United States currency, inventory sheets, employee records, rubber stamps with the names of some of the twenty-four listed companies, equipment installation schedules, accounts receivable information, floppy disks, deposit records, disbursement records, address books, seizure of one copy each of seventy-two video tapes not listed in the warrant, and the seizure of thirty-five "master" video tapes.

Finding probable cause for the issuance of the warrant and the seizure, the district court denied plaintiffs' motion for return of the property seized during the search. White and DI appeal. We reverse and remand.

## JURISDICTION

■■■ We first consider whether the district court had jurisdiction to entertain plaintiffs' motions to return property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure and to set aside the court's order to place under seal the search warrant and all associated documents. Rule 41(e) provides:

(e) **Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Fed.R.Crim.P. 41(e) (1989).[1A]

The language of the rule may be read implicitly to authorize such motions to be made in the district court *before* a criminal prosecution has begun. *See Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *United States v. Rapp*, 539 F.2d 1156, 1160–61 (8th Cir.1976); and *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15 (7th Cir.1978);[2] *see also Pieper v. United States*, 604 F.2d 1131, 1133 (8th Cir.1979) ("[T]he District Court's equitable jurisdiction to suppress illegally obtained evidence before an indictment has been issued has been firmly es-

---

**1A.** In 1989 technical amendments were made to Rule 41(e). We do not deem them material to the issues discussed herein. *See* Fed.R.Crim.P. 41(e) (1990).

**2.** Jurisdiction was found based on "inherent authority of the court over those who are its officers." *Hunsucker,* 497 F.2d at 32. *Rapp* approves this rationale by dictum.

tablished.") The courts which have found jurisdiction appropriate under inherent or equitable principles emphasize that such jurisdiction should be accepted only with caution and restraint. We hold that there is jurisdiction under the circumstances of this case, but we establish no *per se* rule to this effect.

Other courts have found jurisdiction in this type of situation by treating the motion as a civil complaint. *See Grant v. United States,* 282 F.2d 165, 168 (2d Cir. 1960) and *Boyd v. U.S. Dept. of Justice,* 673 F.Supp. 660 (E.D.N.Y.1987). *Sovereign News Co. v. United States,* 690 F.2d 569 (6th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), in which we cited and considered *Hunsucker,* involved the government's retention of documents and materials which were allegedly obscene after the moving party had been acquitted of obscenity charges. We assumed jurisdiction in that case and affirmed, upon certain conditions, the action of the district court which had assumed jurisdiction of the motion. *See also United States v. Giacalone,* 541 F.2d 508 (6th Cir. 1976) (en banc).

Based upon the authority above cited, we believe assumption of jurisdiction is warranted under equitable standards in this particular case and also because the plaintiffs' motion here is, in effect, a civil action initiated after and during a criminal investigation. Therefore, we find that there is jurisdiction and now proceed to the merits.[3]

Comments to Rule 41(e) after the 1972 amendment indicate that "subdivision (e) provides for a return of the property if (1) the person is entitled to lawful possession *and* (2) the seizure was illegal." Fed.R. Crim.P. 41(e) (Advisory Committee Notes) (emphasis in original). No one questions that plaintiffs possessed the property and tapes in question and that they were entitled to possession. The question at issue is the legality of the seizure.

**3.** In somewhat comparable circumstances, without discussion as to the basis of jurisdiction, the Ninth Circuit recently assumed jurisdiction in

CONSENT

■ We deal first with the issue of whether the plaintiffs consented to permit government agents to examine video tapes which plaintiffs had shipped to "peep show" booths for display to a paying public. The government has the burden to prove voluntary consent to a search or seizure in such situations by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974). The party giving consent must have "sufficient authority" over the property or premises to consent to the search, or at least the government officers making the search must have a reasonable belief that the person giving consent has that authority. *See United States v. Diaz,* 577 F.2d 821, 824 (2d Cir.1978) (where officers had reasonable, good faith belief that consent had been given, search did not violate Fourth Amendment); *Mengarelli v. United States,* 426 F.2d 985, 988 (9th Cir.1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 189, 27 L.Ed.2d 186 (1971) (search did not violate Fourth Amendment where officers reasonably believed that the individual had the authority to consent to the search).

The district court observed that plaintiffs contend that issues of fact exist as to whether cooperating witness # 3 (CW # 3), the person through whom the government gained access to the videotapes, is a person or several persons; what CW # 3's agency relationship is to each of the movants and to Trans World News; and what his relationship is to the government, all of which require the Court to conduct an evidentiary hearing on the question of his consent to the search.

Memorandum Opinion at 8.

In dealing with this question, the district court stated that "this question is essentially one related to probable cause," and since the magistrate had "sufficient facts before him [the affidavit and 50 video film descriptions] to conclude that the viewing of the

*Center Air Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747 (9th Cir.1989).

videotapes had been conducted pursuant to the consent of CW # 3 properly given," the magistrate could then determine probable cause. *Id.* We believe, however, that the question of voluntary and authorized consent is a separate issue from probable cause, and must be examined and decided apart from probable cause.

The government expunged considerable portions of the affidavit before furnishing it to plaintiffs. As to certain cooperating sources, the government struck out the identity or title of such persons "for reasons concerning personal and family safety," indicating that these persons wished to remain anonymous. In the affidavit as furnished to plaintiffs, there are no details concerning the specific authority of the person or persons cooperating to give consent to the filming and display of the video tapes to which detailed descriptions of the contents were made. In its response to the plaintiffs' motion, however, the government indicated that CW # 3 "was an employee of White" but "received training" at DI; was "an area supervisor" for DI in a city outside Ohio. The government indicated in this response that this cooperating employee of plaintiffs "personally" received "weekly shipments of videotapes from Cleveland" and put them in peep show booths "for reviewing by the general public ... at several book stores in his area." The government then alleged that this cooperating person was "an agent for movants" White and DI, but the government wished to "conceal" his identity and location because of a "death threat" against "an informant" who was in the same city as CW # 3.

The government's response may have cured the deficiency inherent in the expunging of the important details of the affidavit which made it difficult initially for plaintiffs to address the question of consent. Through the government's response, the plaintiffs were made aware that the informing witness was an area supervisor, who personally and regularly received the video tapes, and then placed them in the peep show booths in his assigned area. The district court concluded that "the searches were pursuant to a valid consent,"

and that "movants have failed to show that an evidentiary hearing is necessary to the decision" because movants raised "only general allegations." We find, however, that the information that the government provided the plaintiffs was insufficient and that a hearing under Rule 41(e) was warranted under the circumstances.

█ Rule 41(e) mandates that "the judge *shall* receive evidence on any issue of fact necessary to the decision." Fed.R.Crim.P. 41(e) (emphasis added). This would infer that in the ordinary situation, the district court *would* hear evidence or testimony concerning the relevant issues involved. One of the important issues in this case is the question of the voluntary and authorized consent of one who would be in the posture of an alleged agent.

The district court cited *United States v. Jones,* 846 F.2d 358 (6th Cir.1988), in support of that rationale. *Jones* makes it clear that "no one single factor is determinative of voluntariness" of consent. 846 F.2d at 360. It adds that "careful consideration of all existing circumstances is necessary." *Id. Jones* involved an evidentiary hearing, and the court held that the search involved in that case was involuntary and unconstitutional. *Jones* is hardly authority for the district court's action in this case. In *Matlock,* also cited by the district court, there were "suppression hearings" based upon defendant's motion. Movants here would have a difficult time, in view of the redacted and edited version of the warrant relied upon by the magistrate, to make specific allegations in contesting the question of consent of a person whose identity was unknown. As pointed out by the plaintiffs, moreover, the magistrate who authorized the search and seizure initially did not have before him the government's response, which would have given him added information, when he made his decision. We believe that a Rule 41(e) evidentiary hearing was warranted on the question of whether the alleged agent had the authority to give consent to the officers or whether the officers reasonably believed that the alleged agent had the authority to give them consent to view the tapes in question.

## EXTENT OF THE SEARCH

The government agents conducted a very extensive search of the plaintiffs' premises. The plaintiffs question whether the massive array of documents, records, tapes, and related items were directly or sufficiently related to the fifty video tapes viewed and to the allegations contained in the warrant affidavit to support the search. Another serious question that plaintiffs raise is whether the seizure of the additional tapes involved in other shipments was authorized. Seizure of materials alleged to be obscene has been the subject matter of many Supreme Court decisions. *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), relying upon *Marcus v. Search Warrant of Property*, 367 U.S. 717, 724, 81 S.Ct. 1708, 1712, 6 L.Ed.2d 1127 (1961), indicated that an initial requirement for the seizure of a commercial film was that a magistrate have a prior opportunity to "focus searchingly on the question of [the film's] obscenity." *Roaden*, 413 U.S. at 506, 93 S.Ct. at 2802. Here, the magistrate had no such apparent opportunity to consider films not seen by him, nor described to him in some detail to the extent additional films were seized, beyond those described in the fifty descriptions attached to Larkin's affidavit.

There is no question but that a broad ranging and pervasive scheme is alleged in the affidavit submitted to the magistrate and examined by the district court in this case. The government contends in its argument that this justified the broad sweep of the search warrant obtained.[4] The government argues that it should not be limited to a "singular episode" of handling obscene products intended for interstate commerce because of money laundering and RICO[5] averments set out in the affidavit and allegedly revealed in its investigation of plaintiffs' activities.

We find that as to the fifty tapes to which there were detailed descriptions, there was probable cause to believe that these tapes were obscene and thus justified the warrant as to these particular tapes. *United States v. Middleton*, 599 F.2d 1349 (5th Cir.1979). Seizure of the records, receipts, notations, bills of lading, journals, ledgers, billing invoices, inventories, and other documents relating to these fifty films might be justified if proper consent were established for obtaining the films or tapes heretofore discussed under authority of *Sovereign News Co.*

■ The taking of notes and films from the office and the premises of plaintiffs, as was done by government agents in *Sovereign News*, would also be justified if valid consent and probable cause were indicated. *See United States v. Espinoza*, 641 F.2d 153, 162–64 (4th Cir.), *cert. denied*, 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981). A second warrant and seizure might also be justified, as in *Sovereign News*, with respect to other items in "plain view" during the first search if such additional articles appeared to be obscene or involve directly related criminal activity. While conclusions alone of an investigating officer or officers concerning the obscenity and the illegality of the kind involved in this case are not enough, the totality of the circumstances concerning contents of apparently-like products and films observed during the first search may furnish probable cause for a later warrant and search based on information obtained in the initial search. *Stanford v. Texas*, 379 U.S. 476, 485 n. 16, 85 S.Ct. 506, 512 n. 16, 13 L.Ed.2d 431 (1965); *Sovereign News*, 690 F.2d at 576. The warrant must not leave it to the discretion of the executing officers what is, or is not, to be seized.

This is both a Fourth Amendment and a First Amendment case. We do not consider, therefore, *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), a case frequently cited in the government's brief on the issue of the validity of the warrant and the search, to be

---

4. The government's brief puts it this way: "A broad criminal enterprise cannot avoid the scrutiny of a lawful search simply because of its magnitude." Government's Brief at 25.

5. The RICO charges are based on an underlying predicate of dealing in obscenity.

relevant because *Andresen* deals with the Fifth Amendment.

■ Whether a warrant is too general or too broad, rather than limiting the search to particular documents and records, is a difficult area and depends upon the circumstances of the case. Compare the cases cited by the government on this question, although neither are obscenity cases, *United States v. Spilotro*, 800 F.2d 959 (9th Cir.1986) (a decision by Judge Kennedy holding the warrant too broad and general), with *United States v. Wuagneux*, 683 F.2d 1343 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

■ In this respect, we hold that the district court was in error in not conducting a hearing to consider carefully the ramifications and circumstances involved in the issuance of the warrant. In remanding this case to the district court for a hearing, there remain issues as to whether the initial viewing of the fifty films or tapes (before they were described in detail) constituted an illegal search and seizure. *See Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

The general rule that contraband may be seized on a probable cause determination "is otherwise when materials presumptively protected by the First Amendment are involved." *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989). "It is '[t]he risk of prior restraint, which is the underlying basis for the special Fourth Amendment protection accorded searches for and seizure of First Amendment materials' that motivates this rule." *Fort Wayne Books*, 109 S.Ct. at 928. *Fort Wayne Books*, decided shortly before the district court's decision in this case, provides valuable analysis of the relationship between underlying obscenity violations and the broad RICO charges, albeit in a state law context. The Court stated:

At least where the RICO violation claimed is a pattern of racketeering that can be established only by rebutting the presumption that expressive materials are protected by the First Amendment, that presumption is not rebutted until the claimed justification for seizing books or other publications is properly established in an adversary proceeding.

*Fort Wayne Books*, 109 S.Ct. at 929 (footnote omitted).

Our remand to the district court, then, is supported by *Fort Wayne Books*, which indicates that an "adversary proceeding" is usually required in this type of situation.[6] We recognize, at the same time, that what may be punishable under the obscenity laws "may form the basis of a racketeering conviction." 109 S.Ct. at 930 (Justice Blackmun's concurring opinion). We recognize also that there is no "higher" standard for probable cause for issuance of a warrant required in First Amendment cases such as this one. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874, 106 S.Ct. 1610, 1614, 89 L.Ed.2d 871 (1986).[7]

We do not reach a decision on the government's contention that in any event *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would protect or vindicate the search made pursuant to the warrant, even if too broad and general in scope. We do express doubt that *Leon* would protect the search and seizure if it were determined that the warrant at the outset was deficient and failed to meet constitutional standards as contended by plaintiffs.

We REMAND this controversy to the district court for an adversary hearing under the circumstances and for consideration of the issues under the principles set out in this opinion. The district court, on remand, should consider also whether certain evidence may properly have been seized if

---

6. We should also note "[w]hile a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the publication may not be taken out of circulation completely until there has been a determination of obscenity after an evidentiary hearing." 109 S.Ct. at 927.

7. *P.J. Video* also holds that a magistrate is not required to view personally allegedly obscene films prior to issuing a warrant. *See* 475 U.S. at 874 n. 5, 106 S.Ct. at 1614 n. 5.

probable cause were established, but the warrant itself may have been overbroad. *See Worthington v. United States*, 726 F.2d 1089 (6th Cir.), *cert. denied*, 469 U.S. 827, 105 S.Ct. 109, 83 L.Ed.2d 53 (1984).

The dissent in this case emphasizes the government's important and legitimate interest in prosecution of, and the cessation of, racketeering and obscenity. While we understand this emphasis and do not fail to appreciate the government's important concerns, we are also mindful of the potential constitutional issues raised by the plaintiff, and we seek a proper consideration and balancing of these competing interests in this case by remanding for a hearing. Nor should plaintiff be compelled, under the circumstances related, as the district court suggests, to await the ultimate outcome of seizures of master tapes which may involve unlawful prior restraints.

■ Our remand in this case does not require the district court again to review independently the written descriptions of the fifty films or tapes provided to the magistrate on the question of obscenity thereof. We note also that the magistrate's determination of probable cause is entitled to considerable deference. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

We REVERSE and REMAND for an evidentiary hearing for the reasons indicated and for the purposes set forth herein.

DeMASCIO, Senior District Judge, dissenting.

After careful analysis of an affidavit prepared by a government agent, a magistrate concluded that the government had proba-ble cause for search warrants authorizing the seizure of property on premises owned by appellants.[1] No one seriously disputes the fact that the government complied with requirements of the fourth amendment or reasonably thought it did. Nevertheless, the court today holds that the district judge had jurisdiction to entertain a pre-indictment motion for return of property filed pursuant to Fed.R.Crim.P. 41(e), and that appellants, on remand, are entitled to a hearing on the issues of consent and the overbroadness of the search warrants.

With all due respect, I dissent. I remain convinced that the district judge did not have jurisdiction to consider appellants' pre-indictment motion for return of the seized property; that the order denying appellants' Rule 41(e) motion is interlocutory within the holding of *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); and that appellants are not entitled to an evidentiary hearing to challenge the validity of the search.

When the government conducts a search pursuant to a lawful warrant, a district court does not have jurisdiction to entertain a pre-indictment Rule 41(e) motion for return of seized property. There are no proceedings before the court to which the Federal Rules of Criminal Procedure apply. Fed.R.Crim.P. 1 and 54(a). The essence of a pre-indictment Rule 41(e) motion for return of property is that the search and seizure procedures employed by law enforcement officers were "unlawful" and property was "illegally seized" in violation of the fourth amendment. If the property was not "illegally seized," Rule 41(e) is inapplicable.[1] A search conducted pursu-

1. Prior to the 1972 amendment, Rule 41(e) specified five grounds for the return of property and suppression of evidence. The first ground, that property was illegally seized, was most commonly used. The 1972 amendment eliminated these grounds and the rule applied when property was illegally seized. If the property is not "illegally seized," there is no "person aggrieved" with standing to invoke Rule 41(e). The most recent amendment to Rule 41(e) took effect on December 1, 1989. It now provides:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treat-

ant to a lawful warrant is presumed valid and motions seeking the return and suppression of evidence must await the filing of a formal indictment. The subject of a search, however, may very well allege that law enforcement officers acting pursuant to a lawfully authorized warrant nevertheless unlawfully seized property, intentionally or otherwise. If this allegation is made, the court should not automatically set a Rule 41(e) hearing as the majority implies. The court should first examine the petition to determine whether the facts alleged, if true, warrant relief. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In its analysis, the court should balance the interests of the government and the aggrieved party to determine whether to exercise jurisdiction over the pre-indictment motion. Failure to take the government's interests into account has the result of giving the procedural rule broader scope than the constitutional amendment. The government would be required to endure the consequences of the exclusionary rule for engaging in an unlawful search, but receive no consideration for executing a constitutional search.

Yet, in complete disregard of the warrant issued in this case, the majority has decided that a Rule 41(e) motion can be filed at any time and when it is, "the assumption of jurisdiction is warranted under equitable standards ... and also because the plaintiff's motion here is, in effect, a

civil action...." [2] Majority Opinion 408. The court reads Rule 41(e) to implicitly "authorize such motions to be made in the district court *before* a criminal prosecution has begun." The majority endorses the rationale of *Pieper v. United States,* 604 F.2d 1131, 1133 (8th Cir.1979) which held that "equitable jurisdiction" exists to suppress illegally obtained evidence before an indictment has been issued. *Pieper* and a number of other courts have created their own jurisdiction for a number of reasons, without a statutory or constitutional basis. *See Linn v. Chivatero,* 714 F.2d 1278 (5th Cir.1983) (judicially created "anomalous jurisdiction"); *Marshal v. Central Mine Equip. Co.,* 608 F.2d 719 (8th Cir.1979) (equitable jurisdiction based on inherent power over officers of the court); *Richey v. Smith,* 515 F.2d 1239 (5th Cir.1975) (same); *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir.1974) (same); *Smith v. Katzenbach,* 351 F.2d 810 (D.C.Cir.1965) (same); *Grant v. United States,* 282 F.2d 165 (2d Cir.1960) citing *Lapides v. United States,* 215 F.2d 253 (2d Cir.1954) (Rule 41(e) motion treated as civil complaint); *Russo v. United States,* 241 F.2d 285 (2d Cir.) *cert. denied,* 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33 (1957) (treated pre-indictment Rule 41(e) motion as independent civil proceeding); *Lord v. Kelley,* 223 F.Supp. 684 (D.Mass.1963) (jurisdiction based on supervisory powers over federal law enforcement officers).

ed also as a motion to suppress under Rule 12.

The 1989 amendment again emphasizes its applicability to an "unlawful search and seizure." The amended rule, however, was made applicable to lawfully seized property as well. A "person aggrieved" by a lawful search may seek the return of property held by the government for an unreasonable length of time. *Mr. Lucky Messenger Serv., Inc. v. United States,* 587 F.2d 15 (7th Cir.1978).

**2.** To support this conclusion, the court cites *Grant v. United States,* 282 F.2d 165 (2d Cir. 1960). The court in *Grant* recognized that Rule 41(e) "embodies a practice which long antedated it but whose jurisdictional character, at least in those cases where the motion precedes the criminal proceeding to which the evidence relates, has been little discussed." *Id.* at 168. *Grant* only considered the issue whether an order staying the United States Attorney from

submitting evidence to a grand jury pending the determination of a Rule 41(e) application was appealable.

No case has satisfactorily explained how a rule applicable in criminal proceedings can be treated as a "civil" complaint. However, there has never been a need to treat Rule 41(e) as a civil action, or to exercise judicially created jurisdiction. The Supreme Court has always recognized that there is an independent plenary action for return of property seized without a warrant. *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Cogen v. United States,* 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929); *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). *See also, Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

However, the cases that have exercised judicially created jurisdiction have done so with "caution and restraint" and then only where a warrantless search was involved; *Lord v. Kelley*, 223 F.Supp. 684; or law enforcement agents acted deceitfully, *Linn v. Chivatero*, 714 F.2d 1278; or acted with callous disregard of the fourth amendment; or the appellants would suffer needless injury by continued deprivation of the seized property. But, the circumstances that compelled some courts to exercise judicially created jurisdiction are not present in this case. Here, the agents did not act deceitfully or in callous disregard of appellants' constitutional rights. Thus, there is no need to exercise supervisory jurisdiction over the agents or the United States Attorney. The district court was not faced with a situation involving an egregious violation of the fourth amendment; the agents searching the premises were in possession of a warrant permitting a broad search to uncover a wide range of illegal activity. *See Matter of Search of 4801 Flyer Ave.*, 879 F.2d 385 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). Further, appellants cannot allege that they are suffering needless injury from the continued deprivation of their property where government agents have offered to make available copies of all documents seized. By refusing to accept the government's offer, appellants tacitly admit that they are not concerned with recovering their property as much as they are with the future suppression of the evidence. Thus, appellants would suffer no prejudice by waiting until criminal proceedings have been filed.

As suggested above, before the district court creates jurisdiction over a pre-indictment motion for the return of property, the interests of the parties should be balanced. In this case, the government's interests in the ongoing criminal investigation far outweigh any possible prejudice to appellants by the delayed return of the seized property. The government has its entire investigation at risk whereas the appellants have not come forward with any reason why they should not be compelled to await the possible return of an indictment and the subsequent filing of a motion to suppress. Rule 41(e) provides that a motion to suppress should be made in the trial court rather than the district in which the property was seized. That policy is not furthered when a Rule 41(e) motion is entertained during a grand jury investigation. Judicial expansion of Rule 41(e) to encompass pre-indictment relief results in redundant and time-consuming litigation that permits appellants to challenge the evidence that will be presented to a grand jury. As a result, the grand jury proceedings can be jeopardized by the delay. On the other hand, appellants would suffer no prejudice if compelled to present this motion at a later date, assuming that indictments are eventually returned. If appellants' substantive claims have any merit, there is ample opportunity to pursue them at the conclusion of the investigation. This holding does not impair constitutional rights. It only defers the time for asserting them. We should not read Rule 41(e) in a manner that does not take into account the government's interest in the property seized during its administration of the criminal laws. As Judge Learned Hand points out:

> It would be an intolerable burden upon the prosecution of crime, if it were possible to test in advance the competency of evidence which the accused, ... might be able to show was likely to be used against him. The protection of the individual from oppression and abuse by the police and other enforcing officers is indeed a major interest in a free society; but so is the effective prosecution of crime, an interest which at times seems forgotten.

*In Re Fried*, 161 F.2d 453, 465 (2d Cir.) (Hand, J. concurring), *cert. denied*, 331 U.S. 858, 67 S.Ct. 1751, 91 L.Ed. 1865 (1947).

With all due respect for the majority view, I would hold that there was no reason for the district court to consider the merits of this Rule 41(e) motion at the pre-indictment stage. The exercise of jurisdiction in this case has enabled appellants to needlessly obstruct the government's investigation of their alleged illegal activi-

ties—an essential policy reason behind my view that pre-indictment Rule 41(e) motions should not be considered. Such judicial expansion of Rule 41(e) opens the door for the accused to involve the government in needless litigation in every case in which the accused anticipates a grand jury indictment.

Next, based upon *Sovereign News Co. v. United States*, 690 F.2d 569 (6th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), the majority assumes without discussion that this court has appellate jurisdiction to review the pre-indictment ruling of the district court.[3] In *DiBella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962), the Court held that the denial of a pre-indictment motion under Rule 41(e) is appealable "[o]nly if the motion is solely for the return of property and is in no way tied to a criminal prosecution *in esse* against the movant." Rule 41(e) as amended in 1972 automatically suppresses the evidence as part of the remedy provided by the rule. Thus, although entitled "Motion for Return of Property," an order granting a Rule 41(e) motion automatically suppresses evidence. Since the appellants here also seek suppression of the evidence, their motion does not satisfy the "solely for return" requirement of *DiBella*. While not expressly stated in appellants' motion, it is clear that they filed their motions to prevent the presentation of the evidence to a grand jury. In *DiBella*, the court stated:

> Presentations ... before a grand jury ... are part of the federal prosecutorial system leading to a criminal trial. Order granting or denying suppression in the wake of such proceedings are truly interlocutory.

369 U.S. at 131, 82 S.Ct. at 660 (citations omitted).

In *Sovereign News Co.*, 690 F.2d 569, this court ignored the first element of the *DiBella* test. The court also viewed the second element as one that asks whether the criminal process has shifted from the investigatory to the accusatory stage. *Id.* at 571. However, under *DiBella*, the criminal process does not shift to the accusatory stage until the filing is made by the grand jury. Thus, under *DiBella*, if there is a possibility that the movant may be brought to trial, courts should view Rule 41(e) motions as tied to a criminal prosecution. In *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561, the Court, in holding that the exclusionary rule does not apply to grand jury investigations, made it clear that grand jury proceedings must not be impeded by preliminary hearings, or interrupted by appeals. *Id.* at 349–52, 94 S.Ct. at 620–22. Finding appellate jurisdiction here ignores this authority. The cases that have dismissed appeals by persons under grand jury investigation have correctly applied *DiBella*. *See, e.g., Standard Drywall, Inc. v. United States*, 668 F.2d 156 (2d Cir.), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982); *Imperial Distrib., Inc. v. United States*, 617 F.2d 892 (1st Cir.) *cert. denied*, 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980); *In Re Grand Jury Proceedings*, 604 F.2d 806 (3d Cir.1979) (per curiam).

Since I believe this appeal is interlocutory under either of the *DiBella* tests, there is no need to consider the merits of appellant's claims. *United States v. Modern Bookkeeping, Inc.*, 780 F.2d 1023 (6th Cir.1985) (Celebrezze, J. concurring). Nevertheless, I do so to point out how my conclusions differ from those of the majority. In my view, the district court did not abuse its discretion by declining to hold a hearing. The redacted affidavit, together with the government's response to the motion, set out all of the circumstances surrounding CW#3's consent in sufficient de-

---

**3.** The court also cites *United States v. Giacalone*, 541 F.2d 508 (6th Cir.1976) as an example of this court's exercise of appellate jurisdiction over an order granting a Rule 41(e) motion for return of property. This court, *en banc*, held that the appeal was not rendered moot by the subsequent issuance of a grand jury subpoena. This court was not cited to nor did it consider the holding in *DiBella v. United States*. The presiding district judge treated the Rule 41(e) motion as an appeal from the magistrate's finding of probable cause. *Giacalone*, 541 F.2d at 510. No issue other than the sufficiency of the search warrant was considered by the district court or this court on appeal.

tail. These documents advised appellants of CW# 3's possessory rights to the tapes, his relationship to appellants, and the circumstances as they objectively appeared to the government agents at the time of the search. Therefore, no hearing on the issue of consent is required. The government agents reasonably believed that CW# 3 had access to and the authority to consent to the viewing of the initial 50 tapes. *See United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Whether the government acted reasonably under the circumstances known to it is a question of law not fact. *Cf. United States v. Leary,* 846 F.2d 592 (10th Cir.1988).

Moreover, the warrant was not objectionable under particularity principles. Based on the affidavit supporting the search warrant, there was probable cause to believe that appellants were engaged in a pervasive scheme that included distribution of obscene tapes and money laundering throughout 20 cities. When, as in this case, there is probable cause to believe that a business is permeated with illegal activity, a warrant may authorize a broad search and seizure. *See, e.g., United States v. Kail,* 804 F.2d 441 (8th Cir.1986).

Finally, a hearing is not necessary to consider the seizure of the additional tapes that were not viewed by the magistrate or depicted in the descriptions attached to the affidavit. Only single copies of these tapes were seized. It is clear that these tapes were seized as evidence of labeling and continuity of enterprise, rather than for content. The adversary proceeding that the Court in *Fort Wayne Books, Inc. v. Indiana,* 109 S.Ct. 916 (1989), found necessary arose in the context of the seizure of *all* available copies of allegedly obscene books without a judicial determination of the obscenity issue. Here, there was no prior restraint and a remand for the purpose of a hearing is unwarranted. Therefore, I would dismiss the appeal and allow the government to continue its investigation unhampered by time-consuming hearings.