**Jose BAUTISTA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 92 C 4817.**

United States District Court, E.D. New York.

Feb. 11, 1993.

---

Jose Bautista, pro se.

Mary Jo White, U.S. Atty., Brooklyn, NY (Stanley N. Alpert, Asst. U.S. Atty., of counsel), for defendant.

## MEMORANDUM AND ORDER

### NICKERSON, District Judge:

Plaintiff Jose Bautista seeks the return of property seized from him at the time of his arrest at John F. Kennedy International Airport ("Kennedy Airport") on or about September 27, 1991.

### I

Because this is one of many similar cases which now clog the docket and consume the resources of the Eastern District of New York, the court reviews the broader problem of which this case is a minor manifestation before addressing the particulars of Bautista's claim.

Requests by criminal defendants and convicted prisoners for return of property seized from them may be divided into three types.

In the first type the government seizes property, later determines that it is not needed as evidence or subject to forfeiture under 21 U.S.C. § 881(a)(6), and agrees to release it to a relative, friend or agent designated by the claimant who is able to travel to Kennedy Airport to take delivery of the property. While this court sometimes receives letters and telephone calls from anguished defendants and their counsel seeking the court's intervention to expedite the return of such property, the court has not yet been greatly burdened by these controversies. Presumably the heads of appropriate agencies at Kennedy Airport and the United States Attorney are conscious of the time consumed by the court, Public Defenders Services Unit of the Legal Aid Society, the private defense bar and the United States Attorney's office and have or will develop appropriate procedures.

In the second type of case, when the individual is arrested at Kennedy Airport, his or her suitcase, return airplane ticket, United States currency, foreign currency and other belongings are seized. He or she requests that the property be shipped to his or her detention facility or to an addressee in a foreign country (or, at times, in this country).

The government concedes that it is holding the claimant's property, but it refuses to pay for shipping, contending it has no authority to expend funds for such purpose (although it seemingly pays the cost of mailing smaller items). The claimant, a visitor to the United States, has no money to pay for such shipping since the government has already taken all of his or her money. So far, these cases remain immune from resolution, although the United States Attorney's Office urges the court to be patient while it attempts to find an administrative solution.

In the third type of case, a claimant and the government disagree as to which property was seized at the time of arrest. In such cases, if and when the court determines through motion practice that genuine issues of material fact exist, counsel may be appointed to represent the claimant and, with or without counsel, the claimant is brought to Brooklyn so that a trial may be conducted.

These cases are particularly troublesome because they so easily could be avoided if

arresting agents maintain accurate inventories, as required under 41 C.F.R. § 128–50.101, and, where possible, obtain signed acknowledgements from detainees that the inventory is accurate and complete.

They are made more difficult by the reported uncooperativeness of at least some of the agents. For example, this court recently directed the government to file a motion for summary judgment or, if appropriate, to seek an evidentiary hearing in *Aikude v. United States of America*, 92 CV 625, 1993 WL 32735. The Assistant United States Attorney, informed the magistrate judge assigned to the case that she could not move for summary judgment because the appropriate agent was not willing to sign an affidavit. She suggested that the magistrate judge schedule a hearing or trial to compel the agent to appear.

The United States Attorney's office reports that it is focusing substantial attention on these cases. In particular, it says that inventory procedures at Kennedy Airport have been improved, and it predicts that factual disputes will diminish in number in the future.

Nevertheless these cases will continue to impose an extraordinary burden on the courts of this district. In addition to *Bautista*, some sixteen other cases have been filed in these chambers in the past six months. *Toure v. United States of America*, 92 CV 4534; *Kyei v. United States of America*, 92 CV 4704, 1992 WL 314892; *Obi v. United States of America*, 92 CV 4860; *Onuoha v. United States of America*, 92 CV 2326; *Umenuka v. United States of America*, 92 CV 5180; *Job v. United States of America*, 92 CV 5332; *Adjudua v. United States of America*, 91 CV 2568; *Nwankwo v. United States of America*, 92 CV 5678; *Chinwuba v. United States of America*, 92 CV 4924, 1993 WL 32743; *Moussa v. United States of America*, 92 CV 2579; *Uke v. United States of America*, 92 CV 4129; *Ihuoma v. United States of America*, 92 CV 4363, 1993 WL 42111; *Ezeanni v. United States of America*, 92 CV 4459; *Akinbola v. United States of America*, 92 CV 4629; *Gomez v. United States of America*, 92 CV 4647, 1993 WL 42103; and *Charles v. United States of America*, 92 CV 5407. A similar number was filed in the preceding six months.

Moreover, these disputes suggest a broad deprivation of constitutional rights. The court cannot assume that every detainee who has been deprived of property by federal officials at Kennedy Airport has written his or her sentencing judge to complain. Those who remain silent are forced to endure an additional penalty, beyond that which the sentencing court imposed, due at least to indifference or negligence.

## II

With the scope of the underlying problem clear, the court addresses plaintiff's claim.

### A

In a letter dated October 5, 1992, Bautista requested the return of a carry-on bag, a brief case, a wallet containing personal documents, $2,010 in United States currency, and "$30,000 Colombian pesos." These were allegedly taken from him upon his arrest on September 27, 1991.

Because Bautista was sentenced by this court on February 14, 1992, the court exercised ancillary jurisdiction to decide his post-trial complaint for the return of seized property. *See Mora v. United States of America*, 955 F.2d 156, 158 (2d Cir.1992). The court construed his *pro se* pleading either as a motion under Rule 41(e) of the Federal Rules of Criminal Procedure or as a civil equitable proceeding consistent with *Mora*. It ordered the government to show cause why Bautista's request for return of property should not be granted, and it referred the case to Magistrate Judge Azrack to hear and report.

On January 7, 1993 the government submitted a letter to Magistrate Judge Azrack stating that (1) the government would release the carry-on bag, briefcase, and personal documents "as soon as they can be retrieved from storage, which should take about two weeks," (2) it had no record of 30,000 Colombian pesos being seized, but if the pesos are in Bautista's bags, they

would be returned, and (3) the government had neglected to serve a notice of administrative forfeiture with respect to the $2,010 in United States currency, but that the Drug Enforcement Agency would reopen the matter and inform plaintiff as to how to challenge the forfeiture.

The government contends that because it has resolved or agreed to resolve all outstanding issues, Bautista's "petition" is moot. The magistrate judge issued a report recommending that plaintiff's claims be denied as moot.

### B

The court respectfully declines to follow the recommendation of the magistrate judge.

The government has not yet offered evidence that it has returned the carry-on bag, briefcase and personal documents. Because claimants too frequently encounter difficulties in taking actual delivery of seized property still in government possession at Kennedy Airport, the court will not deem the controversy involving these items to be moot until the government provides evidence that it has returned them or until plaintiff withdraws his claim.

The government has offered no evidence, such as affidavits by the arresting officers and a copy of an inventory made pursuant to 41 C.F.R. § 128-50.101, that it did not seize the 30,000 Colombian pesos from Bautista. Moreover, Bautista was not advised by the magistrate judge to submit evidence, such as an affidavit, that the pesos were seized from him. Thus the court finds a genuine issue of material fact as to whether the government seized the Colombian pesos.

The matter of the missing pesos raises a further question. One would expect a passenger on a flight from Colombia to carry at least a small amount of Colombian currency. Under the current rate of exchange, 30,000 Colombian pesos would be worth $47.49. N.Y. Times, Feb. 7, 1993 at D23 (foreign exchange table). The court is puzzled as to why the government would exhibit such apparent indifference to the alleged missing pesos since Bautista's claim raises the unappealing inference that if the pesos are not found among Bautista's belongings, they may have been stolen from him.

Last, the government has not offered any explanation as to why the $2,010 in United States currency should be the subject of administrative forfeiture proceedings nor has it provided any evidence that such proceedings have commenced. If, as in *Onwubiko v. United States of America*, 969 F.2d 1392, 1399 (2d Cir.1992), the government seized the United States currency simply because (1) Bautista was carrying a controlled substance, and (2) he was carrying the currency, Bautista ultimately may have a claim under the Tucker Act, 28 U.S.C. § 1346, and, perhaps, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Onwubiko*, 969 F.2d at 1397–1400; *Odoom v. United States of America*, No. CV 92–2543 (EHN), 1992 WL 237252 (E.D.N.Y. Aug. 21, 1992).

Again, the court is troubled by the apparent lack of adequate controls over currency seized at Kennedy Airport from an arrested person, as evidenced by the government's failure timely to institute forfeiture proceedings.

### C

Finding the legal issues raised in this case to be complex and the plaintiff unable to afford counsel, the court directs the clerk of the court to appoint counsel for Bautista, *see id.; Hodge v. Colon*, 802 F.2d 58, 61 (2d Cir.1986), so that Bautista may press his claims relating to (i) property acknowledged by the government to be in its possession, (ii) the 30,000 Colombian pesos which may not be in the government's possession, and (iii) the $2,010 in United States currency.

### III

The court notes that the facts and issues raised in this case are like those raised in the many other return of property filed in these chambers and, one presumes, throughout the Eastern District of New

York. An appointment of counsel in each such case would overwhelm the court's panel of *pro bono* counsel. Yet the failure to appoint counsel in many of these cases would lead to disparate and unfair results.

The court therefore directs plaintiff and his appointed counsel to consider whether to amend the complaint to bring a class action because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

By examining these cases as a group the court may be better able to discern common facts. For example, if the government rarely has a record that it seized foreign currency, other than coins which cannot be readily exchanged for United States currency, the inference of petty theft might be made. *See, e.g., Gomez v. United States of America,* No. CV 92–4647, 1993 WL 42103 (E.D.N.Y. Feb. 9, 1993).

Plaintiff's counsel may consider whether an amended complaint should state claims under (i) the Tucker Act, 28 U.S.C. § 1346, (ii) the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* (iii) *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or (iv) civil equitable principles as ennunciated in *Mora.*

Any such class action might also address the government's practice or policy regarding the shipment of seized property, whether to the claimant directly or to a domestic or foreign addressee of claimant's choosing, if such practice or policy constitutes an unreasonable deprivation of property. *See United States of America v. Nestor Ulloa,* No. CR 92–1067, 1993 WL 42177 (E.D.N.Y. Feb. 9, 1992).

It would seem ludicrous for this court to review or intervene in the administrative procedures governing the taking, retention and return of property seized from persons arrested at Kennedy Airport. Such procedures are best left to the sound discretion of the United States Attorney and the heads of relevant agencies at the airport.

But if, in the course of this litigation, the court finds a persisting pattern in which arrested persons are wrongfully denied the return of their property, the court would be compelled to issue appropriate remedial orders.

Plaintiff's counsel shall seek leave to file an amended complaint within 60 days of appointment unless directed otherwise by the court. This court will consider all future motions in the case, other than pretrial discovery motions which shall be referred to Magistrate Judge Azrack for disposition.

So ordered.