Kalamgo OTONYE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CV 92–4230 (RR).

United States District Court,
E.D. New York.

June 16, 1995.

Otonye Kalamgo, Memphis, TN, Plaintiff Pro Se.

Jennifer Boal, Assistant U.S. Attorney, Brooklyn, NY, for Defendant.

RAGGI, District Judge.

The government has filed objections to this report and recommendation insofar as it recommends that this court exercise jurisdiction over the claim. The argument challenges the holdings in various Second Circuit cases which are of course controlling on this court. The court chooses instead to *dismiss* this case on the merits for the reasons stated by Magistrate Judge Go. Plaintiff has filed no objections to this recommendation.

Clerk of the Court to mark this case *closed.*

So Ordered.

## ORDER

### May 17, 1995

GO, United States Magistrate Judge:

Plaintiff Otonye Kalamgo, *pro se* and *in forma pauperis,* seeks the return of personal property allegedly seized from him upon his arrest by agents of the defendant United States. By order dated October 15, 1992, Judge Reena Raggi referred this matter to the assigned Magistrate Judge[1] for report and recommendation on matters in dispute and on defendant's subsequent motion to dismiss. For the reasons set forth below, I respectfully recommend that defendant's motion to dismiss and plaintiff's application for relief be denied.

### BACKGROUND

Plaintiff was arrested on June 12, 1991 upon his arrival at John F. Kennedy Airport for illegally smuggling heroin in his brief case. He subsequently pleaded guilty to charges of importation of heroin and was

---

1. The motion was originally referred to Magistrate Judge John Caden and reassigned to me.

sentenced by Judge Raggi to a term of imprisonment at a federal facility.

By letter filed with the Court on September 3, 1992 addressed to Judge Raggi, plaintiff sought the return of certain personal property seized upon his arrest. He claimed that although the Government had returned hand luggage containing food items and shoes, the government had failed to return "the main luggage that contains all my clothing, including a camera." Treating plaintiff's letter as a complaint and motion for return of property, Judge Raggi ordered the Government to respond.

In a letter dated September 1, 1992,[2] Assistant United States Attorney ("AUSA") Elizabeth Lesser advised the court that the Government had originally seized a grey duffel bag containing traditional African clothing, shoes, toiletries and dried fish, as well as a watch, necklace, black belt, miscellaneous documents and $298.00 in United States currency. AUSA Lesser claimed, as set forth in an affidavit of Special Agent Gerald Heller of the United States Customs Service, that this constituted all the property seized from Mr. Kalamgo. She also advised that all his property had been properly forwarded to appropriate parties: Mr. Kalamgo's passport, alien registration card and airline ticket were sent to the Immigration and Naturalization Service, the money and remaining documents to Mr. Kalamgo at the prison where he was incarcerated, and all the personal property, except the dried fish, to Sambo Nelson, a person designated by Mr. Kalamgo.

Because of the factual dispute regarding the extent of the personal property that had been seized from plaintiff, I ordered an evidentiary hearing and directed plaintiff to submit a list of items that he claimed were not returned by the Government and their estimated values. Plaintiff then submitted a list with his affidavit dated October 20, 1993 which contained eighteen categories of items which plaintiff claimed were missing and were worth $12,900.00. *See* Defendant's Exhibit 4.

After an evidentiary hearing held on November 10, 1993, the United States filed a motion to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

*Motion to Dismiss.*

■ On a motion to dismiss, the allegations in the complaint must be construed liberally in favor of the plaintiff, particularly where plaintiff is *pro se.. McNeil v. United States,* —— U.S. ——, ——, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). All well pleaded allegations must be accepted as true. *Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Kenevan v. Empire Blue Cross and Blue Shield,* 791 F.Supp. 75, 78 (S.D.N.Y.1992). In addition, when a question of subject matter jurisdiction is raised, a court may look beyond the face of the pleadings to consider evidence, by affidavits or otherwise, which bears upon the jurisdictional issue. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947), *overruled on other grounds, Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Cargill Intern., S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1019 (2d Cir.1993).

■ The government contends that jurisdiction does not exist in this case under either the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* or the Tucker Act, 28 U.S.C. § 1346, which it claims are the "two possible basis [sic] for district court jurisdiction" established under *Mora v. United States,* 955 F.2d 156 (2d Cir.1992). *See* Government's Memorandum in Support of Its Motion to Dismiss the Plaintiff's Complaint, p. 2 ("Def.'s Memo."). Remarkably, in a later submission, the government argued that *Mora* and other recent Second Circuit decisions were wrongly decided and conflicted with Supreme Court opinions that did not address the precise issues decided by the Second Circuit. *See* Letter of AUSA Jennifer Boal dated May 4, 1994 ("Boal Let."). Such a position is based on an incorrect and wooden reading of *Mora.*

---

2. A copy of this letter, which apparently was misdocketed in another case, is attached with the letter of AUSA Jennifer Boal dated January 6, 1993.

In *Mora*, the Second Circuit recognized that Rule 41(e) of the Federal Rules of Criminal Procedure was designed, *inter alia*, to provide a means for persons to seek the return of property unlawfully seized by federal law enforcement officials. *Mora*, 955 F.2d at 158. Even after the termination of criminal proceedings or in the absence of any criminal proceeding, courts have ancillary equitable jurisdiction to hear motions for return of property. *Mora*, 955 F.2d at 158, *quoting United States v. Wilson*, 540 F.2d 1100, 1103 (D.C.Cir.1976) ("the district court has both the jurisdiction and duty to return [seized] property"); *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir.1987).

Rule 41(e) was amended in 1989 expressly to clarify the ambiguity in the prior rule regarding the scope of a court's jurisdiction to hear motions for return of seized property. As the Advisory Committee observed, the amendment now clearly provides recourse for persons aggrieved by the continued possession of property seized by the government as well as for persons who are not the subject of pending criminal proceedings. Fed. R.Crim.P. 41(e) advisory committee notes (1989).

Notwithstanding uncertainty over the scope of Rule 41(e),[3] courts prior to *Mora* have long recognized their inherent power to address the motions of persons unlawfully deprived of property. *See, e.g., Go–Bart Importing Co. v. United States*, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Grant v. United States*, 282 F.2d 165, 168 (2d Cir. 1960) (Friendly, J.) ("The rule embodies a practice which long antedated it ... We have said that such a motion 'was in effect a complaint initiating a civil action' "), *citing, Lapides v. United States*, 215 F.2d 253, 254 (2d Cir.1954); *Russo v. United States*, 241 F.2d 285, 287 (2d Cir.), *cert. denied*, 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33 (1957). This power stems from the court's disciplinary authority over attorneys appearing before it as officers of the court. *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir.1974); *Grant*, 282 F.2d at 168. This inherent power also extends to federal agents charged with "observ[ing] 'standards for law enforcement' established by 'the federal Rules governing searches and seizures.' " *Lord v. Kelley*, 223 F.Supp. 684, 689 (D.Mass.1963) (Wyzanski, J.), *appeal dismissed*, 334 F.2d 742 (1st Cir. 1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965), *quoting Rea v. United States*, 350 U.S. 214, 217–18, 76 S.Ct. 292, 294–95, 100 L.Ed. 233 (1956); *Bolger v. Cleary*, 293 F.2d 368, 369 (2d Cir.1961).

Nothing in *Mora* can be construed as a limitation on a court's equitable jurisdiction. Because the plaintiff sought equitable relief, the Second Circuit in *Mora* addressed and rejected a defense raised by the government that the FTCA provides an adequate remedy at law. *Mora*, 955 F.2d at 159–60. The court considered the existence of a legal remedy unimportant, because once "a court has asserted its equitable jurisdiction over a matter, it retains that jurisdiction so long as necessary to afford appropriate relief to the movant." *Id.* at 160. Although I agree with defendant that the Second Circuit was mistaken in further finding that the FTCA also afforded Mora a legal remedy,[4] this conclusion was not essential to the holding in the case and does not nullify any exercise by this court of its ancillary equitable jurisdiction. In any event, the lack of a remedy under the FTCA merely underscores the appropriateness of equitable relief here.

More important, the government concedes that Second Circuit case law provides for equitable jurisdiction to award money damages in return of property actions such as in the instant case. *See* Boal Let. at 1–2. In fact, three Second Circuit cases have explicitly recognized the authority of lower courts to award money damages against the govern-

---

**3.** *See Bova v. United States*, 460 F.2d 404, 406 (2d Cir.1972).

**4.** As discussed in *Garnay, Inc. v. M/V Lindo Maersk*, 816 F.Supp. 888, 897 (S.D.N.Y.1993), *aff'd, without op.*, 29 F.3d 621 (2d Cir.1994), the Second Circuit's decision in *Alliance Assurance Co. v. United States*, 252 F.2d 529 (2d Cir.1958), which the *Mora* court cited in finding a remedy under the FTCA, was expressly overruled by the Supreme Court in *Kosak v. United States*, 465 U.S. 848, 855, 104 S.Ct. 1519, 1524, 79 L.Ed.2d 860 (1984). However, *Garnay* was not a return of property action and the FTCA was the sole basis for jurisdiction there.

ment in instances where the government has lost or destroyed property which should have been returned. *See Rufu v. United States,* 20 F.3d 63, 65 (2d Cir.1994) *(per curiam );* *Soviero v. United States,* 967 F.2d 791, 792 (2d Cir.1992); *Mora,* 955 F.2d at 159–60; *but see Rufu v. United States,* 876 F.Supp. 400 (E.D.N.Y.1994). Other Circuits have followed the Second Circuit's lead. *See Thompson v. Covington,* 47 F.3d 974 (8th Cir.1995) (following *Mora );* *United States v. Rotzinger,* 47 F.3d 1174, 1995 WL 64688 (7th Cir. 1995) (unpublished disposition) (same); *United States v. Sanders,* 48 F.3d 1233, 1995 WL 94666, 1995 U.S.App. LEXIS 3999 (10th Cir. filed Feb. 28, 1995) (unpublished disposition) (same); *see also United States v. Martinson,* 809 F.2d 1364, 1368 (9th Cir.1987); *United States v. Francis,* 646 F.2d 251, 262–63 (6th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981).

The government argues that *Mora* and its progeny conflict with Supreme Court precedents holding that any waiver of sovereign immunity should be construed narrowly. *See* Boal Let. at 2–3 *citing United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *United States v. Testan,* 424 U.S. 392, 399–401, 96 S.Ct. 948, 953–55, 47 L.Ed.2d 114 (1976) and *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1973). However, none of these cases involves the exercise of the court's equitable jurisdiction and none is apparently squarely antithetical to the Second Circuit's return of property jurisprudence. Accordingly, I recommend that the district court follow recent and controlling Second Circuit law and deny defendant's motion to dismiss for lack of subject matter jurisdiction.

I note that in a number of other return of property cases brought in this court, the government has insisted that the petitioner file an administrative claim or has moved to dismiss a complaint for failure to exhaust administrative remedies under the FTCA. *See, e.g., Osijo v. United States,* 850 F.Supp. 992 (E.D.N.Y.1993) (Judge John R. Bartels denying such a motion); *Martin v. United States,* Dkt. No. CV 93–3083 (E.D.N.Y. filed December 14, 1993) (same); *see also Mora,* 955 F.2d at 159–61 (government argues for the adequacy of the FTCA as a remedy). While the United States cannot be estopped [5] from making the instant motion in this case or the opposite argument in other return of property cases, the United States Attorney's Office should seriously reconsider its contradictory stances before bringing any such motions in the future. Such exploitative use of jurisdictional limitations in the FTCA is particularly troubling given the fact that most plaintiffs in return of property actions proceed without counsel. *See Bautista v. United States,* 813 F.Supp. 187, 190–91 (E.D.N.Y. 1993) (Judge Nickerson noting that assignment of counsel in individual return of property cases would overwhelm the court's *pro bono* panel but, recognizing that denial of counsel would result in unfairness).

■ Subject matter jurisdiction in this case also exists under the federal question jurisdiction statute, 28 U.S.C. § 1331, since the complaint can also be styled as one under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for deprivation of property in violation of Fourth Amendment protections against unreasonable seizures. *Cf., Onwubiko v. United States,* 969 F.2d 1392, 1399 (2d Cir.1992) (federal question jurisdiction exists over return of property action challenging propriety of administrative forfeiture because it is a deprivation of property without due process of law); *see also* Fed.R.Crim.P. 41(e) advisory committee notes (1989), *citing United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983).

---

5. *See City of New York v. Shalala,* 34 F.3d 1161, 1168 (2d Cir.1994) (no application of equitable estoppel against the United States in the absence of misrepresentation, reliance and misconduct); *Young v. U.S. Dept. of Justice,* 882 F.2d 633, 639 (2d Cir.), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990) (no judicial estoppel without reliance, but noting that the principle "is supposed to protect judicial integrity by preventing litigants from playing 'fast and loose' with courts, thereby avoiding unfair results and 'unseemliness.' "), *quoting Long Island Lighting Co. v. Transamerica Delaval, Inc.,* 646 F.Supp. 1442, 1447 (S.D.N.Y.1986) quoting 18 Wright & Miller, *Federal Practice and Procedure* § 4477 at 779 (1981).

Moreover, since the government never owned and no longer can claim any evidentiary interest in the plaintiff's property, it is, in effect, simply a stakeholder or bailee of the property subject to regulations regarding the protection of such property. *See* 41 C.F.R. § 128–50.101 (1991) discussed in *Mora,* 955 F.2d at 158.[6]

Since *Bivens* actions are brought against federal officers acting in the name of the United States rather than against the United States, no waiver of sovereign immunity by the government is required even for claims of monetary damages. *Bivens,* 403 U.S. at 395–96, 91 S.Ct. at 2004–05. If the government were correct that there is a serious question of subject matter jurisdiction in this case, plaintiff's original letter application should be liberally construed to assert a claim against either the Regional Commissioner of Customs, Area Director for John F. Kennedy International Airport or other appropriate official from the Customs Service responsible for custody of the property.

Because this Court clearly has subject matter jurisdiction over plaintiff's claim, I recommend that the defendant's motion to dismiss be denied.

*Testimony on Lost Property*

The only other issue is whether plaintiff is entitled to recover any damages for the property he claims was lost. Plaintiff, who appeared without the benefit of counsel, Special Agent Heller and Probation Officer David Williams testified at the hearing.

Plaintiff testified that he has lived in the United States since 1981 and obtained a B.A. in marketing in 1988. Transcript of Hearing ("Tr.") at 23; Def. Exh. 17. After graduating from college, he had difficulty in obtaining employment and reported approximately $11,000 in income on his 1990 tax return. At the time of his arrest, he had been working as a cook at Chucky's Fried Chicken earning an average of $2,800 per month. He reported no assets on his financial disclosure form for appointment of counsel. Def. Exh. 3; Tr. 24–27.

Plaintiff testified that he had three pieces of luggage when he arrived in the customs area at JFK airport: a suitcase, a piece of hand luggage, and a brief case containing the smuggled drugs. Transcript of Hearing ("Tr.") at 5. He claims that the government returned most of the contents of the hand luggage, including food items, toiletries and two pairs of shoes, as well as a wristwatch, necklace, belt and money. Tr. 6–7. However, he did not receive the property in the suitcase which he had checked in or a camera and some art objects placed in the hand luggage. Tr. 5–6, 10. He described the missing camera as a Minolta Lotus 7000 which he had purchased six months earlier for $650 (Tr. 15) and the artwork as wooden sculptures costing $2,700. (Tr. 17–8).

Plaintiff further testified that the suitcase contained primarily his personal clothing, most of which had been worn only a few times (Tr. 10–11). This missing clothing consisted of the following: two new business suits costing $850 each and two used ones at $550 each (Tr. 12); seventeen 100% cotton dress shirts costing $40–45 each (Tr. 12–13); thirteen pairs of trousers costing over $90 a pair (Tr. 13–14); one pair of shorts and five T-shirts costing $45 apiece; a pair of two month old Nike tennis shoes costing $90 (Tr. 14); two pairs of Levi jeans costing $190 (Tr. 15, 31; 8 old ties costing approximately $40–45 each ($360)[7]; a Parker pen ($125); underwear ($25); 2 rings ($1,600); and a tie clip

---

**6.** I also note that in most return of property cases, the plaintiff alleges damages under $10,000. In these cases there is clearly jurisdiction under the Tucker Act. In addition, although 28 U.S.C. § 1346(a) of the Tucker Act specifies that the district courts have original jurisdiction concurrent with the Court of Federal Claims for claims under $10,000.00, the government is wrong in assuming that the Court of Federal Claims has exclusive jurisdiction of claims over $10,000.00. *See Ward v. Brown,* 22 F.3d 516 (2d Cir.1994). Here also, in the event of a waiver of sovereign immunity, the court could assert juris-diction under the Tucker Act. *Id.; but see In re Chateaugay,* 53 F.3d 478 (2d Cir.1995) (*dicta* that the Federal Court of Claims has exclusive jurisdiction over Tucker Act claims exceeding $10,000).

**7.** The dollar figures in parenthesis are based on plaintiff's claimed values on the list he submitted to the court and admitted as Def. Exh. 4. This list also referred to 3 rayon shirts ($135) and a belt ($50) which plaintiff did not discuss in his testimony.

($35) (Tr. 18). In addition, the suitcase contained two sets of traditional African garments that he bought for himself and his wife for $1,500 (Tr. 11).

Plaintiff was arrested after a three week vacation in Nigeria visiting his family. While abroad, he purchased the African clothing, art work and food items worth $4,200. However, he did not declare any of these items on his Customs Declaration Form, nor did he mention these art objects or the gold rings in his original letter to the Court. Def. Exhs. 1, 2, 5; Tr. 32–34.

Agent Heller testified that he is one of the evidence custodians at J.F.K. Airport and was responsible for returning plaintiff's property (Tr. 36). He returned the cash seized from the plaintiff by mailing a money order for $295.25 to the plaintiff on October 3, 1991 (Tr. 37–38). On that same day, he mailed a watch, necklace and belt to the defendant in care of Sambo Nelson in Tennessee (Tr. 38–39). He later retrieved from the Customs Service warehouse a duffel bag containing dry fish, African garments, and toiletries which he also mailed to Tennessee. He did not find any other property belonging to the plaintiff in the warehouse (Tr. 39–42).

David Williams of the United States Probation and Parole Department testified regarding the statements made by plaintiff during his presentence interview. Plaintiff advised that he imported the heroin to improve his economic condition and confirmed his employment at Chucky's Fried Chicken and earnings of about $10,000 in 1990 (Tr. 51–53).

*Findings of Fact*

I did not find plaintiff to be a credible witness. He was nervous and evasive when pressed about his financial condition and other damaging topics and gave inconsistent statements. For example, he wrote on his October 20, 1993 list that he had "wooden terra-cotta Nok carving[s] & Bambara dance headdress" (Def. Exh. 4), but described these items in his testimony as "big items," then as four wooden carvings and later as "small pieces" (Tr. 6, 17–18). His attempt to explain his failure to mention the $2,700 artwork in his letters to the court dated June 1, 1992 and September 14, 1992 was not convincing (Tr. 21) since he stated in both that his hand luggage was returned but he was missing the "luggage that contain[ed] all my clothing including a camera."

In particular, I found plaintiff's testimony regarding the quantity and value of the missing items to be unbelievable. He claimed an extraordinary amount of missing clothing (including four suits, thirteen trousers and seventeen dress shirts)—which, given his medium build, simply could not been sufficiently compact to fit into the large suitcase he claimed was lost. Nor did I find it plausible that plaintiff would carry so much formal clothing on a three week pleasure trip or that he had the means to purchase such expensive clothing as $850 suits, $90 trousers or even $45 T-shirts, let alone valuable artwork and gold rings. Moreover, plaintiff was so obviously unfamiliar with cameras that I doubt he would have acquired a $650 camera.

 In short, I did not find that plaintiff provided any credible evidence that he ever owned any of the claimed lost property. While I agree that plaintiff might have had clothing in addition to the few personal items that he claims were returned, there was no trustworthy evidence presented regarding the property plaintiff did actually own and was lost. Thus, I recommend the plaintiff be awarded nothing for the property he claims was lost.[8]

---

8. Because of the serious question of plaintiff's credibility in this case, my findings would not change regardless of the burdens of proof and persuasion applied. However, I note that there is a dearth of case law regarding burdens in cases where the government agrees to return the seized property but a dispute arises over what property was seized in the first place. *Compare Martinson*, 809 F.2d at 1369 (burden shifts to government to show reasonableness of seizure after completion of criminal proceedings or when no criminal proceedings initiated); 1989 Advisory Committee Notes to Fed.R.Crim.Pro. 41(e) (no standard set in rule, but determination of reasonableness of seizure based on circumstances).

The determination of the appropriate burden should be governed by concerns over "the minimum standard of proof tolerated by the due process requirement" and an assessment of "the weight of the private and public interests affected, but also a societal judgment about how the

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for return of property be denied and this action be dismissed.

Copies of this report and recommendation have been mailed to the parties listed herein on this date. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, by June 14, 1995. Failure to file objections within the specified time waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

risk of error should be distributed between the litigants." *Santosky v. Kramer,* 455 U.S. 745, 755, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982), *citing Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Since, as previously discussed, plaintiff's constitutional rights under the Fourth Amendment are implicated, it makes sense that the government should initially bear the burden of proving that it dealt with plaintiff's property in accordance with regulations prescribed in 41 C.F.R. § 128.50–101 or other acceptable standards. Once this showing is made, the burden should then shift to the claimant to demonstrate the existence of the claimed property.

In either situation, because the deprivation involved is of property rather than a defendant's liberty or life, there is no need for a heightened procedural protection reflected in a standard of proof beyond use of a "fair preponderance standard." *See Santosky,* 455 U.S. at 761, 102 S.Ct. at 1398. In addition, the claimant should always bear the burden of proving the extent and value of claimed property as he would have greater access to information and knowledge of these items.